# THE INTERNATIONAL FINANCE CORPORATION

*vs.*

# THE CALVERT DRUG COMPANY.

*Bill of Exchange—Conditional Acceptance.*

Under the Negotiable Instruments Act, the acceptance of a bill of exchange is qualified if it depends on the fulfilment of a condition therein stated. p. 314

A mere reference to, or statement of, the transaction in connection with which an acceptance is given, is not *per se* the statement of a condition. p. 314

That, in the acceptance of a bill of exchange, the printed words, "accepted for payment," were followed by the written words "as per R. contract," showed that the acceptance was conditional on the performance of the contract referred to.

pp. 313-323

*Decided January 8th, 1924.*

Appeal from the Baltimore City Court (FRANK, J.).

Action by the International Finance Company against the Calvert Drug Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William L. Rawls,* for the appellant.

*Arthur W. Machen, Jr.,* with whom were *Raymond S. Williams* and *Hershey, Machen, Donaldson & Williams* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appeal in this case was taken from a judgment of the Baltimore City Court in favor of the defendant in an action brought by the appellant against the appellee on two "customer's acceptances," and the sole question which it presents for the consideration of this Court is whether the words "as per Reolo Contract" qualify the words "Accepted for Payment," which they immediately follow, so as to destroy the negotiability of the acceptances, and that question grows out of the following facts:

Reolo, Incorporated, is an Ohio corporation with offices in Cleveland, Ohio, engaged in the sale of certain medicinal preparations. The Internatianal Finance Company is a Virginia corporation, with offices in the City of Washington, apparently engaged in the business of buying and discounting commercial paper. The Calvert Drug Company is a corporation with offices in Baltimore, Maryland, engaged in the wholesale drug business.

In May, 1921, a Mr. A. B. Smith, representing the Reolo, Incorporated, company, approached Mr. R. E. Lee Williamson, general manager of the Calvert Drug Company, and proposed to deliver to that company $4,800 of its products, which at that time were unadvertised and unknown in Baltimore. The result of the negotiation between them was that, on May 10th, 1921, a contract was executed by the two companies which in part provided:

"The Calvert Drug Company, of Baltimore, Maryland, undertakes the distribution of the products of the Reolo, Inc., of Cleveland, Ohio, under the following conditions: * * *

"In consideration for the shipment to the Calvert Drug Co., by Reolo, Inc., of

    50 Gross Reolo at $96.00 per Gross
    25 Gross Reolax at $24.00 per Gross
    25 Gross Honest John at $24.00 per Gross

"All charges for transportation prepaid by Reolo,

Inc.  Above prices subject to a trade discount of 20%
from above list prices.

"Of guaranteeing to the Calvert Drug Co., the ex-
clusive wholesale distribution of the products of Reolo,
Inc., in the territory above named—of acceptance by
Reolo, Inc., of all invoices rendered by the Calvert
Drug Co., for all shipments made, except as above pro-
vided for—and the prompt payment to the Calvert
Drug Co., by Reolo, Inc., for all such invoices rendered
as above provided—the Calvert Drug Co., agrees to
issue to Reolo, Inc., a non-negotiable acceptance in the
amount of $4,800, payable in four months from the
date of such acceptance—provided *all* the agreements
made by Reolo, Inc., with the Calvert Drug Co., have
been faithfully executed by Reolo, Inc., to the satisfac-
tion of the Calvert Drug Co.

"If such agreements have not been met to the satis-
faction of the Calvert Drug Co., then the above named
non-negotiable acceptance becomes null and void—and
it is not to be considered a claim by Reolo, Inc., against
the Calvert Drug Co.

"If at any time an acceptance becomes due and there
remain on hand in the possession of the Calvert Drug
Co. any unsold portion of the products of the Reolo,
Inc., it is understood that the acceptance will be re-
newed for that unsold portion for another four months
period or until the Calvert Drug Co. has received full
payment from Reolo, Inc., for all goods covered by
such acceptance.  In other words—the Calvert Drug
Co. assumes no responsibility, financial or otherwise,
for any unsold products of Reolo, Inc., that remain in
their possession.

"It is agreed by Reolo, Inc., and the Calvert Drug
Co., that the above agreement is supplemental to and
becomes a part of the contract entered into this 10th
day of May, 1921, between Reolo, Inc., and the Calvert
Drug Co., of Baltimore, Md., and that same shall ap-
ply to and govern all transactions of similar character

during the life of said contract—viz: one year from date, May 10th, 1921."

On the same day certain other papers in the form of letters which formed a part of the contract were also executed. The first, addressed to the Calvert Drug Company by Reolo Incorporated, contained these statements:

"In consideration of your accepting our wholesale distributor contract, if you will send out one dozen Reolo to each of your accounts in Baltimore and nearby surrounding territory, on memo. we will run a four months schedule in the Baltimore News, comprising one medium sized 'Ad' every week day, and a large ad every Sunday—this schedule to be followed by another one of equal lineage at its expiration, covering a total of twelve months. We will also agree to run some small copy in the other papers.

"The Baltimore Sun will agree to send a letter to each of these accounts, advising them of this extra large schedule for the first four months, and enclosing them a proof of a full-page 'Ad' that will run in their paper for them to hang in their window. We will also write a special letter to each druggist, thanking them for accepting this quantity, advising them of our P. M. allowance, and enclosing P. M. pamphlets and envelopes, so their clerks can return the P. M. slips for redemption. We will also have a salesman call on these accounts at the expiration of from four to six weeks, after the advertising starts, and check up on their sales, getting counter displays, window displays and talking the merits of our products and seeking further co-operation—agreeing, of course, to keep a representative in your territory constantly."

The second was addressed to Reolo, Incorporated, and in part read as follows:

"Enclosed please find our Customer's Acceptance for $4,800.00, in consideration of which you hereby ap-

point us your Wholesale Distributor to the local distributors you now have or may acquire in the following States:

Maryland, Delaware and West Virginia. * * * If at any time, the acceptances become due and we have not made full shipment of all goods on hand covered by our acceptances, it is understood that same will be renewed for the unsold portion thereof for another four-month period, or until we have received full payment from you covering this entire order and acceptances.

"It is also understood that your products will be advertised in the above named territory to the best of your ability and judgment consistently for the term of this agreement, to wit, one year."

These two letters were signed both by the Calvert Drug Company and by the Reolo Company.

The first of the customer's acceptances referred to in the last paper was in the following form:

"Customer's Acceptance,
12329 Superior Avenue,
Cleveland, Ohio.

"May 10, 1921.

"Four months after date, pay to Reolo, Inc., of Cleveland, Ohio, or order, three thousand ($3,000.00) 00/100 dollars.

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

"Value received and charge to account of:

"To The Calvert Drug Co.,
"106 W. Redwood St.,
"Baltimore, Md.

"Reolo, Inc.

"By   J. P. Spinnler, Manager.

"By   L. J. Rothenbecker, Treasurer.

"Please write name of your bank here:

"National Exchange Bank of Baltimore, Maryland.

"Accepted for payment as per Reolo contract for amount and date shown hereon.

                                    "Calvert Drug Co.
            "R. E. Lee Williamson, General Manager.

        "(Endorsed on the back is the following) :
                    "Reolo, Inc.,
                "G. F. Felger, Asst. Treas.,
                "L. J. Rothenbecker,
                "J. P. Spinnler,
                "Albert B. Smith.
            "International Finance Corp.,
                    "David P. Smith, Asst. Treasurer.
        "(Revenue stamps)
                    "Customer's Acceptance.
                "Cleveland, O., May 10, 1921.
    "Four months after date, pay to Reolo, Inc., of Cleveland, Ohio, or order, three thousand dollars ($3,-000.00).

    "The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

    "Value received and charge to the account of:
"The Calvert Drug Co.,
        "106 W. Redwood St.,
                "City.

                            "Reolo, Inc.,
                    "By   J. P. Spinnler,
                        L. J. Rothenbecker.

    "Accepted for payment as per Reolo, Inc., contract for amount and date as shown here.

                        "Calvert Drug Co.,
                            "R. E. Lee Williams,
                                "General Manager."

And the second was identical with it except that the amount named was $1,800.

After these papers were executed, Reolo, Incorporated, sold the two acceptances to the International Finance Corpo-

ration for $3,744, under the terms of an agreement entered
into between them on November 8th, 1920. In that contract
Reolo, Incorporated, was named as the first party and the
finance company as the second party, and its purpose may be
gathered from these extracts from its contents:

> "Whereas, first party is desirous of selling to sec-
> ond party Open Accounts Receivable, Notes, Accept-
> ances, Leases, Mortgages, Contracts and Choses in Ac-
> tion, hereinafter designated as 'Accounts,' evidencing
> sales and deliveries of personal property usually dealt
> in by first party * * *.

> "Second party will from time to time, during the
> continuance of this agreement, buy such accounts be-
> longing to first party as may be acceptable to second
> party, and will pay therefor One Hundred Per Cent.
> (100%) of the face value thereof, less a charge equal
> to the legal rate of interest on the money outstanding
> thereon of which 78 per cent. of the face value thereof
> shall be paid in cash upon acceptance thereof by second
> party, and the remaining 22 per cent. less any deduc-
> tions and plus any over-payments by the debtors and
> less total charges, as shown in lines 41 to 46 hereof, to
> be paid to the first party immediately upon payment of
> any such accounts to second party; provided, that no
> payments of any such remainder need be made so long
> as any accounts purchased hereunder are affected by
> any breach or violation of warranty hereunder, but
> such remainder and any moneys, accounts or property
> of first party which may come into possession of sec-
> ond party may be held and later applied to the pay-
> ment of any accounts or any indebtedness. * * *

> "The total compensation to be paid by first party
> for all services and other considerations specified in
> lines 19 and 41 hereof, and for the charge as men-
> tioned in lines 11 and 12 hereof, it is hereby agreed
> shall be one-twenty-fifth of one per cent. (1/25 of
> 1%) of the face value of accounts for each day from

date of purchase by and until paid to second party, plus $5 per $1,000 of accounts purchased. * * *

"In consideration of the prompt purchase and remittance by second party for accounts acceptable to second party, without waiting to make a complete credit investigation thereof, first party hereby warrants that: (a) First party and each debtor named in an account is solvent and will remain so until maturity thereof. (b) There will be no suspension of business, request for general extension, bankruptcy petition, or any act amounting to a business failure by or against first party or any debtor. (c) Every account purchased hereunder and any settlement received thereon will be paid in full at maturity in cash or Washington par funds. (d) Prompt payment will be made to second party of any allowance or credit upon any account sold to second party. (e) Each account offered for sale to second party shall represent a bona fide sale and delivery of property usually dealt in by first party, and shall be for a certain, undisputed, liquidated claim or demand, which is due or to become due on the dates set forth. (f) First party will not sell or assign any of its own accounts elsewhere without first giving ten days' written notice to second party of such intention. * * *

"Contemporaneously with the purchase of accounts hereunder, first party will, by proper instrument in writing, assign and set over to second party such accounts purchased by it as aforesaid, to the end that second party may be and become subrogated to all of the rights, securities or guaranties possessed by the first party in respect thereto, including the right of stoppage in transit should the latter right be exercised, or should the debtor named in any account fail or refuse to accept, receive or retain, or return the property evidenced by such account, or should said property be rerouted or reconsigned, then said property or property exchanged therefor, and any new account created

through the resale thereof with or without consent of second party, shall be treated as having been sold hereunder by first party to second party, with all the rights of absolute ownership thereof, and first party will deliver said property and assign said account to second party, or will hold same in trust for and subject to the orders of second party, and upon request of second party will purchase and pay for said property, at the net invoice value thereof. Immediately upon consummation of the purchase of accounts hereunder, the first party will make upon its books suitable and proper entries disclosing the absolute sale of said accounts to second party. First party further will execute and deliver to second party any instrument necessary, proper or convenient to carry into effect the terms, provisions and conditions of this agreement, or to facilitate the collection of accounts purchased hereunder."

Accompanying that contract was a "guaranty and waiver," to which it is not necessary to refer in detail.

After the Calvert Drug Company had delivered to Reolo, Incorporated, these two acceptances, a part of the merchandise to be delivered under the contract between those two corporations was shipped, but Reolo, Incorporated, did nothing further to carry out the terms of that contract, and none of the goods so delivered were sold by the Calvert Drug Company.

Notwithstanding that the contract referred to stipulated that the acceptances should be non-negotiable, six days after receiving them Reolo, Incorporated, sold them to the International Finance Company at the price stated above and, being unpaid at maturity, they were in due course protested. On September 13th, 1921, and following the protest, suit was brought on them in the Baltimore City Court on February 19th, 1922. At the trial of that suit the court, over plaintiff's objection, allowed the defendant to offer evidence showing the execution of the contract between the appellee

and Reolo, Incorporated, the giving of the acceptances, and the contract itself, and that ruling is the subject of the first exception. At the conclusion of the whole case the plaintiff offered three prayers and the defendant six. The court granted the plaintiff's first prayer in connection with the defendant's third and fourth prayers (which it granted), granted the defendant's fifth prayer and refused all the others, and those rulings are the subject of the second exception. These rulings on the evidence and the prayers together raise the single question to which we have referred, and that question we will now consider.

In dealing with that question we will assume without deciding that the appellant was a holder in due course of the acceptances and not merely a collection agent for the Reolo, Incorporated, company. The court below dealt with the case upon that assumption and no point as to it was made in this court by counsel for the appellee, and as it could only relate to the plaintiff's right to recover, if the defendant's acceptance was unconditional, we will not further refer to it in connection with the question immediately before us.

In approaching that question it should be remembered that it involves the construction of words used by the parties to a commercial transaction to express their common intention, according to the meaning and value given those words in common business usage, and that to give those words any forced or unusual meaning, different from that which would be given them by persons engaged in commerce and business and familiar with its terminology and usage, would be to defeat the intention of the parties to the transaction, and no such consequence should be permitted unless as the result of the peremptory mandate of some statute or arbitrary rule of law.

The Negotiable Instruments Act, the only statute which is applicable to the facts before us, does not deal with this precise point. It defines negotiable instruments, such as bills

of exchange, promissory notes, acceptances and the like, and distinguishes conditional from unconditional acceptances, but it does not attempt to supply any formula or rule which could guide us in determining whether given words do or do not raise a condition and, in deciding whether such words should be construed as creating a condition, we are remitted to the same rules of construction which controlled us prior to the adoption of that statute. That is, while the statute announces that a conditional acceptance is one which makes payment depend upon the fulfillment of a condition, it does not furnish us with any rule of construction which will enable us to determine whether given words state a condition or are mere words of identification. Those sections of the act which relate to this question are as follows:

Section 22, article 13, C. P. G. L. of Md.: "An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with:

"1. An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"2. A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional";

Section 145, article 13, C. P. G. L. of Md.: "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order of bearer;

Section 151, *Ibid*: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money";

Section 158, *Ibid*: "An acceptance is either general or qualified. A general acceptance assents without qualification to the order of the drawer. A qualified acceptance in express terms varies the effect of the bill as drawn";

Section 160, *Ibid*: "An acceptance is qualified, which is:

"1. Conditional—that is to say, which makes payment by the acceptor dependent on the fulfillment of a condition therein stated."

From these provisions of the statute two conclusions are inevitable, one, that an acceptance is qualified which is dependent upon the fulfillment of a condition therein stated, and two, that a mere reference to, or statement of, the transaction in connection with which the acceptance is given, is not *per se* the statement of a condition; and the difficulty in particular cases lies in determining whether given words amount to the statement of a condition or merely identify and earmark the transaction in connection with which the acceptance is given, and that question has been dealt with in a number of cases, to some of which we will presently refer. But before referring to the cases dealing with facts substantially similar to those involved here, we will revert to the form of the acceptance which is the subject of this suit. Following the words "accepted for payment," which are printed, are the words "as per Reolo Contract" written in red ink by R. E. Lee Williamson on behalf of the Calvert Drug Company. At the time those words were written there, Mr. Williamson believed that they made the acceptance conditional upon the performance of the Reolo contract. The expression "as per" is said in the Oxford Dictionary to mean "according to, as stated or indicated by." Giving it that meaning, which is in accord with common usage, the acceptance would mean, "accepted for payment according to the Reolo contract." "According to" means "in agreement with," and the true meaning of the phrase could, therefore, be stated in these words: "Accepted for payment in agree-

ment with the terms of the Reolo contract." Obviously, as
so used, they were intended to qualify the phrase "accepted
for payment," because they could have related to nothing
else.   If the acceptance was in accordance with or in agree-
ment with the terms of the Reolo contract, it must have de-
pended upon those terms, and the phrase "as per Reolo con-
tract" was not a mere statement intended to identify the
transaction in connection with which it was used.   An illus-
tration of a mere identifying phrase is found in the same
paper in the words "The obligation of the acceptor hereof
arises out of the purchase of goods from the drawer," which
merely states the origin of the transaction.   Used in the
connection they were, and placed as they were, the manifest
purpose and intent of the words was to make the acceptance
conditional upon the performance of the contract, and were
sufficient to charge the purchaser with the duty of ascer-
taining from the acceptor the terms of the contract, and
whether they had been met.

We adverted above to the fact that, at the time he wrote
the words into the acceptance, Williamson believed that they
made it conditional and, while it is true that no mere parol
statement, nor any belief or understanding of his, could have
in any way varied or qualified the words used, or have given
them any different meaning than that which would be ordi-
narily drawn from the interpretation given them in common
usage, nevertheless the fact that a business man of wide ex-
perience should have so interpreted them does emphasize the
danger of attempting, in dealing with commercial paper, to
give to plain words an attenuated and over-refined construc-
tion which may be wholly foreign to anything intended by
the persons using the words.   And it is far more reasonable
to assume that, when a business man qualified his acceptance
of a bill of exchange by the use of the words "as per con-
tract," he intended the words to make the draft depend upon
the contract, than to assume that he thereby intended merely

to identify the transaction in connection with which the acceptance was given.

Turning to the cases to which we have been referred, we find there is some conflict in them as to whether the words referred to, placed as they are in this case, make the acceptance conditional. In one case, *International Finance Company* v. *Northwestern Drug Co.*, 282 Fed. 920, the court, dealing with an acceptance almost identical in form with that involved in this case, reached the conclusion that it did not make the acceptance conditional. But we are unable to accept the conclusion or the reasons given by the learned judge who decided that case. In part he said: "Or if the instrument had read 'Accepted for payment subject to the conditions of the Reolo contract,' I think there would have been no question that those words destroyed the negotiability." To hold that the words "according to the terms of the Reolo contract" do not make the acceptance conditional, but that the words "subject to the conditions of the Reolo contract" do, would be, in our opinion, to exalt form above substance. How could the expression "according to the terms of the Reolo contract" mean anything different from "subject" to those terms, and how could the draft be "subject to the terms of the contract" without being in agreement with them and dependent upon them.

The case of *Myer etc.* v. *Decroix, Verley et Cie.* A. C. (1891), 520, involved these facts. Across the face of a bill of exchange the words "accepted payable at Alliance Bank, London, for H. Myer and Co., Limited," were stamped. Then followed the signature of the acceptor. Above the word accepted the acceptor wrote the words "In favor of Mr. L. Delobbel Flipo only." In an action on the acceptance it was contended that the words last quoted restricted the negotiability of the bill. In passing upon that question Lord Halsbury said: "These words are written above what I have called the acceptance, and I think any mercantile man would regard the words I have quoted as something apart from and

not forming any portion of the acceptance itself. Nor is it easy to construe them as giving any qualification to the acceptance. I think much depends upon the exact form, an apparently complete stamped acceptance being found in its usual place on the bill. * * * I am happy to think that the decision in this case involves nothing more than the proposition that if a person writes across a bill that which unqualified would, in ordinary course, import a clean acceptance of a bill, and intends to qualify its operation, he must do so by plain and intelligible language, and make that qualification sufficiently part of the acceptance itself to be intelligible in the ordinary course of business." And speaking to the same point Lord Watson said: "In the position which they occupy, I do not think the words 'In favor of Mr. L. Delobbel Plipo only' can be regarded as part of the acceptance, or have the effect of qualifying its terms. They are not inserted in it, and are not grammatically connected with it, but occur as a preface to 'No. 28,' which forms no part of the acceptance. 'No. 28' is a memorandum for the purpose of accounts kept between the acceptors and the drawers, or between the former and their bankers, and therefore relates to matters with which holders of the bill, or persons acquiring right to it, have no concern. In my opinion, the preface would naturally be regarded as an integral part of that memorandum having no reference to the terms of the acceptance, and would not convey any intimation that the acceptance was meant to be restricted." And so also Lord Herschell, who said: "In considering whether the effect of the words 'In favor of Mr. L. Delobbel Flipo only' was to make the acceptance a qualified one in the manner suggested, regard must be had both to the words used and to the situation in which they are placed. It may be that if the same words had been found in the body of the acceptance following the word 'accepted,' they would have amounted to the qualification contended for. The presence of any words in the body of the acceptance would of itself suggest the idea that some qualification of it was in-

tended; but where the words are not inserted in the body of the acceptance, I do not think the same impression is likely to be produced, though the words may, of course, be so clearly intended to qualify the acceptance and so incapable of any other reasonable construction that they would be as effectual for the purpose." This case turned entirely upon the location of the words which it was contended affected the negotiability of the bill and cannot be regarded as an authority in favor of the contention made in this case that the words "as per contract" are not in themselves sufficient to import a condition, even though they are part of the acceptance and qualify it.

In *United States* v. *Bank of Metropolis,* 15 Pet. 395, it was held that an acceptance in this form, "accepted on condition that his contracts be complied with," was not broad enough to cover certain defences set up by the acceptor in an action on the bill. In *Greene* v. *Duncan,* 37 S. C. 239, in which *United States* v. *Bank, supra,* was cited in support of the court's finding, it was held that the words, "Whenever Mr. Sharkey finishes his contract for the building of my two stores in the town of Greenwood I will honor the within order," made the acceptance conditional. In the case of *Jury* v. *Barker,* E. B. & E. 459, the court had before it a promissory note in this form: "I promise to pay to Mr. J. C. Saunders or his order, at three months after date, the sum of one hundred pounds as per memorandum of agreement," and in passing upon a contention that the words "as per memorandum, etc.," made the note conditional, Lord Campbell said: "The note here is an absolute and unconditional promise, as to the payer, the payee, the amount, and the date. If the addition of the words in question make the promise conditional, it is on the defendant to show that; and he has not done so." In that case the question was raised in this way: The plaintiff declared on the note and the defendant for plea set out the note but failed to set out the agreement referred to in it. From the decision in that case parties to

this appeal draw different conclusions, based upon the state of the record before the court. The appellant asserts that the court meant to decide that the defendant could only set up the agreement as a defence provided he could show that the plaintiff, if a holder in due course, took with knowledge of it, while the appellee takes the position that the court meant to decide that if the defendant had set out the terms of the contract in his plea it would have been good. It must be admitted that that case throws little light on the question before us, because of the uncertainty inherent in the language in which the decision was expressed, and that doubt is hardly removed by the cases of *Roberts & Co.* v. *Marsh* (1915), 1 K. B. 42 and *Nathans* v. *Ogden*, 93 L. T. 553, and 94 L. T. 126, cited by appellant. The case of *Coffman* v. *Campbell & Co.*, 87 Ill. 98, merely decided that where the words relied upon to render an acceptance non-negotiable only identify the consideration and do not qualify the acceptance, they will not affect the negotiability of the acceptance. And to the same effect is *Nat. Bk.* v. *Wentworth*, 218 Mass. 30, in which the court said: "If the words had been 'subject to the contract for lumber,' or even 'subject to the contract,' the principle invoked would have been applicable. The notes would not have been the defendant's unconditional promise to pay a definite sum. *Hubbard* v. *Mosely*, 11 Gray, 170; *American Exchange Bank* v. *Blanchard*, 7 Allen, 333; *Sloan* v. *McCarty*, 134 Mass. 245. But while the defendant doubtless intended to guard against the payment of money for which in the future he did not receive an equivalent, and the payee has gone into bankruptcy, the language used does not affect the payment of the amounts shown by the notes. By their position, the words well might lead the plaintiff, who is not charged with actual notice, to understand that they were not to be disconnected and applied to an independent outstanding agreement by which the promise was to be modified or restricted, but they referred solely to the consideration for which the notes were given." In *First National*

*Bank* v. *Badham,* 86 S. C. 170, a majority of the court held that a promissory note, containing the words "On or before the first day of January, 1903, for value received in one machinery as per contract November 23, 1899, I, the undersigned of Richland County, state of South Carolina, promise to pay to the order of V. C. Badham, of Columbia, S. C., seven hundred and eighty-five dollars, negotiable and payable at the Caroline National Bank, Columbia," was negotiable, but the force of that decision is lessened by the fact that it was by a divided court.

The case of *Strand Amusement Co.* v. *Fox,* 205 Ala. 183, turned upon the location of the words "as per contract," and while it was held that under the facts of that case those words did not affect the negotiability of the instrument, it nevertheless very carefully limited the application of that decision. In discussing the point it said:

"In the application of this general principle to particular cases, the decisions, as might be expected from the nature of the subject, are by no means harmonious. In this State, so far as we are advised, there is no precedent sufficiently in point to be of assistance in the solution of the instant case. Where the promise to pay is made 'subject to' some other contract referred to, the authorities seem to be agreed that the obligation is conditional, and negotiability is destroyed. *Klots, etc., Co.* v. *Manufacturers', etc., Co.,* 179 Fed. 813, 103 C. C. A. 305, 30 L. R. A. (N. S.) 40, and note, citing numerous cases; *L. R. A.* 1918B, 639; 8 *Corp. Jur.* 124, par. 216. So, where the payment was to be made, 'according to the requirements of a certain agreement of even date herewith,' the note was held non-negotiable. *Chicago, etc., Bank* v. *Chicago T. & T. Co.* 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138. * * *

"Our review of the reported cases, including many not noted above, would seem to show that the conclusion in most cases is made to depend upon the collocation of the reference clause with a particular part of the note and its relation

thereto.  If it is so placed in relation to the promise to pay
as to clearly qualify that promise by subjecting it to the
terms of some other contract referred to, negotiability is de-
nied.  This was obviously the view of the majority in the
Louisiana case, *supra*, viz., that the words 'as per contract,'
etc., related to and qualified, not its immediate antecedent
'value received,' but the promise to pay, the whole being a
single sentence in unbroken sequence.  Conceding, without
affirming, the correctness of that construction, the decision
would seem to be correct."

In this case also the court was divided, as was also the case
in *Continental Bank & Trust Co.* v. *Times Publishing Co.,*
142 La. 209, in which it was held that the words "as per con-
tract," as used in the following promissory note, made it non-
negotiable: "September 1st, 1915, after date, I promise to
pay to the order of myself one hundred and fifty dollars * * *
rent for month of August, 1915, for part of brick building lo-
cated on corner of Marshall street and alley in Shreveport,
La., as per contract dated March 24, 1913."  In that case a
majority of the court first held that the words did not affect
the negotiability of the note, but upon reargument of it the
court decided that they made the promise to pay conditional
and destroyed the negotiability of the note, and in connection
with that conclusion the court said in part:

"A contract to make a payment, or to do something, 'as
per' another, prior, contemporaneous, or subsequent contract,
means that the one contract is to be executed in accordance
with the terms and conditions of the other, upon which the
parties have agreed, or are to agree, and such an agreement
can have no place in a negotiable instrument, concerning
which, it has been well said * * *.  The whole contract must
be expressed upon the face of the instrument, and, among
other things, the promise to pay must be unconditional.  But
a promise is not unconditional which is followed, in the same
sentence, with a stipulation to the effect that it will be ful-

filled, as per another contract, whereby the payment is made contingent upon the non-happening of fortuitous events.    It may be asked, what did the maker of the notes mean by coupling its unconditional promise with the stipulation that we have been considering?    Plaintiff's learned counsel and our learned brethren have thought that it meant nothing more than to identify the notes with the transaction which created the occasion for them, and uselessly recite their consideration, but they have hardly, as we think, taken the stipulation, as we have called it, sufficiently into account, and we are unable to concur in that conclusion. * * * We are of opinion that the notes here in question are not regular upon their faces because of the infirmity which we have here considered and which deprives them of the attribute of negotiability and are further of opinion that as that infirmity was stamped upon their faces when they were made, and was there when they were negotiated, plaintiff acquired them with notice thereof and holds them subject to such defenses as might have been set up against the party to whom they were issued.    That there is nothing novel in the view thus expressed appears from the fact that it has been expressed by other courts."

The case of *Ehrichs* v. *DeMill,* 75 N. Y. 370, involved the construction of the following instrument:    "Please pay to F. Erichs $400, and charge the same to my account of grading and paving Lexington avenue, between Patchen and Broadway, as per contract," which was held conditional and non-negotiable.    In *Hazeltine* v. *Dunbar,* 62 Wis. 162, the question before the court was whether the words written on a bill of exchange by the acceptor, "accepted * * * payable according to a contract * * *," rendered the acceptance conditional and non-negotiable, and in holding that they did have that effect the court said:    "There is not the least uncertainty or ambiguity in the acceptance.    The bill is made payable according to that contract, and in no other way. * * * The words 'according to' are the strongest and most explicit

which could be used to qualify the acceptance and make it conditional upon the performance of the contract." In *Bank of Sherman* v. *Apperson,* 4 Fed. Rep. 25, in construing a promissory note containing the words "being for a part of the third payment on the Goree plantation, as per agreement of the fourteenth February, 1874," it was held that they did not affect the negotiability of the note, but were mere words of identification.

We have referred to these cases not because they established any general rule, but because they illustrate the unsettled and confused state of the law applicable to such facts as are involved in this case. After a careful consideration of these and other authorities relating to the question, such as 6 *C. J.* 124; 3 *R. C. L., "Bills and Notes,"* pars. 541, 542; *Crawford on Neg. Inst. Law,* sec. 244, we have reached the conclusion indicated above that the words "as per contract" are embodied in the acceptance and so related to and connected with it that they must of necessity qualify it, and that they in effect make the contract to which they refer so much a part of the acceptance as to impose upon the holder the duty of ascertaining, before purchasing or discounting the bill, that it is payable under the terms of the contract, which, in other words, is to say that they render the acceptance conditional and non-negotiable. That conclusion seems to us to accord not only with the weight of such authority as there is upon the subject, but with the dictates of sound reason, at times referred to as "common sense."

From what has been said it is apparent that in our opinion there was no error in the rulings of the lower court, and the judgment appealed from must be affirmed.

*Judgment affirmed, with costs to the appellee.*