FIRST NAT. BANK OF HOQUIAM, WASH., v. DeWITT.—81 S. W. (2d) 396.

Eastern Section. November 3, 1934.

Petition for Certiorari denied by Supreme Court, April 6, 1935.

Kennerly & Key, of Knoxville, for appellant.
Lee, Price & Meek, of Knoxville, for appellee.

McAMIS, J.   This bill in this case seeks recovery against appellee, John T. DeWitt, trading as DeWitt & Meredith, by reason of his alleged unconditional promise in writing to accept a trade acceptance in the sum of $6,370.

On February 7, 1930, appellee (hereinafter referred to as defendant) wired Whitney-Ellsworth Company, a firm of brokers, packers, and distributors of canned salmon, as follows:

"If you desire, you may ship us minimum car first quality chums guaranteed by yourselves dollar thirty regular brokerage date invoice sixty days salmon selling slowly but expect better prices later. Wire reply giving shipping date if proposition accepted. (Signed) DeWitt and Meredith."

On the following day, February 8, 1930, Whitney-Ellsworth Company replied as follows:

"As per your wire February 7 have car One Thousand One Hundred cases chums One Dollar and Thirty Cents and One Hundred Sixty cases pink cohoes labeled medium reds at One Dollar and Forty Five Cents. If you will sign trade acceptance payable May 1 without interest, believe can arrange with packer and bank interested. These are first quality chums under our well known White Cross label without grade showing. (Signed) Whitney-Ellsworth Company."

On February 9, 1930, defendant wired Whitney-Ellsworth Company as follows: "Answering ship chums and pinks as per your wire. Mail acceptance payable in Seattle May 1, route Southern Railway quickest and cheapest. (Signed) DeWitt and Meredith."

On February 10, 1930, defendant wrote Whitney-Ellsworth Company as follows:

"Confirming our wire, please ship the car ordered and we want your firm guarantee as to the quality of both pinks and chums. Have no doubt but that this is good stuff, but have had so much trouble with the quality of your salmon, and especially the White Cross brand, that we want to be sure this is first quality goods.

"Mail trade acceptance payable May 1, as per our wire of yesterday."

The Mohawk Packing Company agreed to fill the order, and its proprietor, Victor Borden, about February 13, 1930, offered to discount the trade acceptance, when drawn, to complainant bank, advising it that defendant had agreed to accept a trade acceptance payable May 1, and that the agreement to accept said trade acceptance had been communicated to the broker, Whitney-Ellsworth Company, by wire from defendant.

Under date of February 11, 1930, Whitney-Ellsworth Company wrote complainant bank as follows:

"In order there may be no mistake about the way this car is to be handled, we wish to advise that it is sold to DeWitt and Meredith at Knoxville, Tennessee; payment to be made by trade acceptance, payable here May 1."

On February 19, 1930, the trade acceptance was prepared and turned over to the bank and the full amount paid to Mohawk Packing Company. The bank in this manner became the owner of said trade acceptance.

The bill of lading is dated February 19, 1930. The trade acceptance was forwarded to complainant's correspondent at Knoxville, and on February 27, 1930, was accepted conditionally as follows:

"Accepted February 27, 1930, payable at First National Bank Hoquiam, Washington, whom I hereby authorize to charge to my account.

"DeWitt & Meredith

"Knoxville, Tenn.

"Provided salmon is first quality, payable in Hoquiam, Washington."

It will thus be seen that the acceptance was conditioned upon the salmon being "first quality;" but complainant, claiming to have relied, as it claims to have had a right to do, upon defendant's agreement to accept, contends that defendant's telegram of February 9, 1930, directing Whitney-Ellsworth Company to "mail acceptance payable in Seattle, May 1st," is an unconditional promise in writing

to accept said trade acceptance, binding defendant to pay the amount of same to complainant as an innocent purchaser for value.

Defendant answered the bill alleging that said telegram, by referring to the two previous telegrams, amounted to an agreement to accept only upon condition that the salmon should be as represented. The answer further alleges that the salmon was not as represented, but was in an unmerchantable condition and unfit for sale and that complainant, having taken the trade acceptance with defendant's conditional acceptance, could not recover, but that said trade acceptance is subject to the same defenses it would have been subject to in the hands of the original drawer, Mohawk Packing Company.

The chancellor held that defendant's agreement to accept was conditioned upon the salmon being of the quality represented; that there had been a breach of said condition, and ordered a reference to determine the amount of damage, which he held should be applied in abatement of the amount of the draft.

Complainant has appealed.

Section 135 of the Uniform Negotiable Instruments Act (Code, sec. 7459) provides as follows:

"An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who upon the faith thereof, receives the bill for value."

We agree with learned counsel for defendant that the telegrams must be considered jointly in determining whether or not the agreement to accept was conditional. The second telegram contains specific reference to the first and likewise the last, the one relied upon as an unconditional agreement to accept, shows that it is in reply to a previous telegram, necessitating a review of the whole telegraphic correspondents in order to arrive at the agreement intended. See 8 C. J., page 314, note 50. Without reference to the previous telegrams, the telegram of February 9, 1930, would be too vague and indefinite to describe and identify the paper with the required certainty.

But whether the telegrams, even when thus construed and considered, constitute defendant's agreement to accept conditional, may be doubted.

It is held, with apparent unanimity, that a mere reference to the consideration for which a bill is accepted is insufficient to make the acceptance conditional. 3 R. C. L., page 1311, sec. 542, and 8 C. J., page 323.

The general rule is that such reference to some extrinsic agreement to be sufficient to render the agreement conditional, thereby destroying its negotiability, must be in such terms as to indicate that the paper is to be burdened with the conditions of such agreement. 33 A. L. R., page 1174.

As might be expected from the nature of the subject and

the great diversity of phrases employed in making reference to some collateral agreement, the authorities are not in agreement as to the effect of such references as "according to agreement," "subject to agreement," and "as per agreement."

The prevailing diversity of opinion is noted and fully discussed in International Finance Corporation v. Calvert Drug Company, 144 Md., 303, 124 Atl., 891, 33 A. L. R., page 1162.

The precise question seems to be one of first impression in Tennessee, although the early case of Ryland v. William Brown et al., 2 Head (39 Tenn.), page 270, decided before the passage of the Uniform Negotiable Instruments Act, holds that the recital of the consideration for the execution of a note does not destroy its negotiability. The court, in that case, however, reserved, and did not decide, the effect of such recital to put an otherwise innocent purchaser without notice upon inquiry as to existing equities.

The effect of a reference to an extrinsic agreement in an otherwise negotiable note has frequently been before the courts in foreign jurisdictions, and, by analogy, such cases may be considered as in point here, since a note, in order to be negotiable, must be "an unconditional promise" to pay.     •

In the case of Klots Throwing Company v. Manufacturers' Commercial Company (C. C. A.), 179 Fed., 813, 30 L. R. A. (N. S.), 40, it was held that where the promise to pay is made "subject to" some other contract referred to, negotiability was destroyed, the promise being conditional. So, where the payment was to be made "according to the requirements of a certain agreement of even date herewith," the note was held nonnegotiable in the case of Chicago Trust & Savings Bank v. Chicago Title & Trust Company, 190 Ill., 404, 60 N. E., 586, 83 Am. St. Rep., 138.

In the case of Ehrichs v. De Mill, 75 N. Y., 370, the following instrument was held conditional and nonnegotiable: "Please pay to F. Ehrichs $400, and charge the same to my account of grading and paving Lexington Avenue . . . as per contract."

So, in Haseltine v. Dunbar, 62 Wis., 162, 22 N. W., 165, the words "accepted . . . payable according to a contract," rendered the acceptance conditional.

It is to be noted that in most, if not all the cases cited, the words "subject to," "according to," and phrases of like import are used, connoting an intention to burden the paper with the conditions of some other agreement.

However, in the case of United States v. Bank of Metropolis, 15 Pet., 377, 395, 10 L. Ed., 774, 780, it was held that an acceptance in this form, "accepted on condition that his contracts he complied with," was not broad enough to cover certain defenses set up by the accepter in an action on the bill.

In the case of Jury v. Barker, El. Bl. & El., 459, 120 Eng. Reprint,

580, the court had before it a promissory note in this form: "I promise to pay to Mr. J. C. Saunders or his order, at three months after date the sum of 100 lbs. as per memorandum of agreement." Lord Campbell, in passing upon the contention that the words "as per memorandum" made the promise conditional, said:

"The note here is an absolute and unconditional promise, as to the payer, the payee, the amount, and the date. If the addition of the words in question make the promise conditional, it is on the defendant to show that; and he has not done so."

In the South Carolina case of First National Bank v. Badham, 86 S. C., 170, 68 S. E., 536, 544, 138 Am. St. Rep., 1043, a majority of the court held that a promissory note, containing the words, "$785.00. Columbia, S. C., July 12, 1902. On or before the first day of January, 1903, for value received in one machinery as per contract November 23, 1899, I, the undersigned of Richland county, state of South Carolina, promise to pay to the order of V. C. Badham, of Columbia, S. C., seven hundred and eighty-five dollars, negotiable and payable at the Carolina National Bank, Columbia. Without offset, with interest at the rate of 8 per cent per annum after maturity until paid, waiving all relief whatever from valuation, appraisement or exemption laws, with all expenses if suit be instituted for collection of this note. And it is expressly understood and agreed that the said V. C. Badham neither parts with the title, nor do the undersigned acquire any title in the property enumerated herein until this note and all other notes given in payment for same, and all extensions and renewals thereof are fully paid. And in case it becomes necessary to employ an attorney to collect this note, a further sum, not exceeding 10 per cent for fees. Sam J. Huffman. P. O. Congaree, Richland Co., State of S. C.," was negotiable. As indicated, there was a divided court in that case.

To the same effect are Strand Amusement Co. v. Fox, 205 Ala., 183, 87 So., 332, 14 A. L. R., 1121, and Bank of Sherman v. Apperson (C. C.), 4 Fed., 25.

In the cases just cited, it is to be noted that the clauses or phrases used in referring to extrinsic agreements are in most, if not all cases, "as per contract," which is not as indicative of an intention to prescribe a condition as "subject to agreement" and similar phrases used in the cases, cited supra, holding negotiability destroyed by their inclusion in the instrument. The conflict in the two groups of cases is, therefore, not as sharp as might seem to be the case, although it must be admitted that they cannot be entirely reconciled.

Passing now to a consideration of the alleged agreement to accept immediately before us, we note that the words "Mail acceptance payable in Seattle May 1," are not found in the same sentence referring to the Whitney-Ellsworth Telegram of February 8, 1930, which represented the salmon to be first quality.

If the qualifying reference had been so placed in relation with the promise to accept as to clearly qualify that promise by making it conditioned upon the goods being as represented in a previous telegram, the agreement to accept would not be unconditional, but the context is not such as to admit of that construction.

The fact that defendant, in the telegram of February 7, 1930, and in his letter of February 10, 1930, required a guarantee upon the part of Whitney-Ellsworth Company as to the quality of the salmon, tends to support the view that the acceptance was not to be conditional, but that defendant was relying upon the guarantee of Whitney-Ellsworth Company for protection against an inferior quality of merchandise.

However, it is not so much a question of defendant's purpose and intention or personal belief as to the effect of the words used. He may have intended to make the acceptance conditioned upon the goods being as represented, yet if this intention was not to be fairly understood by third parties from a reading of the telegraphic correspondence, giving the words their proper context and their natural and customary meaning, then defendant's intention would be immaterial as to the rights of such third parties.

It has been decided that an acceptance will, if possible, be construed as general and not qualified. 3 R. C. L., page 3010, sec. 541. And in the case of an acceptance as distinguished from an agreement to accept, it has been held that the language of the acceptance is to be construed most strongly against the alleged acceptor. 8 C. J., page 314.

We think the words "Mail acceptance payable in Seattle May 1," sufficient to evidence defendant's promise and agreement to accept, for technical language or an express promise in so many words has frequently been held unnecessary. 8 C. J., pages 313, 314. Furthermore, the telegram of February 8, 1930, clearly implies that the sale was conditioned upon defendant's agreement to accept.

We conclude that defendant's agreement to accept was unconditional, entitling the bank as an innocent purchaser for value to recover, free from any defense which might have been available while the paper was in the hands of the drawer.

A consideration of other assignments of error is rendered unnecessary and the decree of the chancellor ordering a reference is reversed and a decree will be entered in this court for $6,368.46 and all the costs of the cause, including the costs of this court, which are taxed to defendant.

### Supplemental Opinion.

We are of opinion complainant should not be allowed interest upon the recovery in this case, and the judgment to be entered in this court will not include interest.

Section 7305, Code 1932, is inapplicable and the allowance of interest is discretionary. While the statute is mandatory as to the allowance of interest upon the obligations mentioned, among them bills of exchange, the recovery in this case is upon the agreement to accept and not upon the trade acceptance itself.

In the case of Brownlow v. Payne, 2 Tenn. App., 154, it was held that unless the instrument falls clearly within the statute, the allowance of interest is discretionary with the court.

We are of opinion that the statute makes the allowance of interest mandatory only upon instruments stipulating a fixed amount to be paid at a date fixed by the instrument. In the case before us, we allow recovery upon the agreement to accept as set out in the telegrams passing between the parties. No date of payment is fixed, and to arrive at the amount of the trade acceptance, to be later accepted, it is necessary to go through a mathematical calculation. The statute does not cover an obligation of this nature.

Portrum and Ailor, JJ., concur.