## CIRCUIT COURT OF LOUDOUN COUNTY

Robert A. Murdick et al.

v.

Georgelas & Sons, Inc., et al.

January 17, 1992

Case No. (Law) 9283

BY JUDGE THOMAS D. HORNE

This case was tried before a jury on November 15, 1991. The jury returned a verdict in favor of the defendant bank. Counsel for the plaintiff has filed a Motion for a New Trial in which he asserts error by the court and requests a new trial.

Plaintiffs herein seek to recover against the defendant bank upon a certain letter of credit dated February 12, 1986. This letter is identified in the record as plaintiffs' Exhibit No. 1. A separate settlement was reached with the defendant, Georgelas & Sons, Inc. Accordingly, the matter was not tried as to it.

The letter of credit was issued to the plaintiffs by bank's predecessor in interest in the face amount of $75,000. It is signed by the Senior Vice President of Guarantee Bank and Trust Company. Central to the instant controversy is the following language set forth in the letter of credit:

> We hereby authorize you to draw on Guarantee Bank and Trust Company . . . for the account of John G. Georgelas & Son, Inc. . . . up to an aggregate amount of Seventy-five Thousand and No/100 U.S. Dollars ($75,000) available by your draft(s) drawn on sight on us, *as per* [emphasis added] the Agreement of Sale dated August 18, 1985, by and between Robert A. & Katherine E. Murdick and William R. & Constance A. Pulliman (Sellers) and John G. Georgelas & Son, Inc. (Purchaser).

This letter of credit was obtained by defendant, Georgelas & Sons, pursuant to the terms of a contract dated August 18, 1985. By the terms of that contract, it was agreed that Georgelas would acquire certain real property owned by the plaintiffs in Loudoun County, Virginia. The Agreement of Sale is identified in the record as plaintiffs' Exhibit # 3. The letter of credit constitutes both a deposit on the purchase price, as well as liquidated damages in the event of a default by the purchaser.

Plaintiffs would have the Court construe the words "as per" as used in the letter of credit to be merely words of identification, while defendant Bank asserts that such words incorporate the conditions of the contract of sale into the letter of credit. The Court agrees with the position asserted by the Bank. It is upon this latter position that the case was submitted to the jury.

A letter of credit is defined as:

> an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this title (Section 8.5–102) that the insurer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor. Section 8.5–103, Code of Virginia, as amended.

Counsel have alluded to the rules of construction to be applied when interpreting letters of credit. The jury was instructed on certain of these. Thus, in cases where words used in the drafting of letters of credit are of doubtful meaning, the court will look to the construction adopted and acted upon by the parties. At the same time, a court must construe ambiguities and uncertainties in drafting strongly against the writer. *Consolidated Sales, Inc. v. Bank of Hampton Roads*, 193 Va. 307 (1952). The Court should not resort to the underlying contract unless the letter of credit explicitly makes the terms thereof a condition precedent to honoring a draft drawn against the letter. *Pringle Assoc. Mtg. Corp. v. Southern National Bank*, 571 F.2d 871 (5th Cir. 1978).

The words "as per" as used in the instant letter of credit are more than words of mere surplusage, recital or identification. Cf., *Pringle, supra*; *West Virginia Housing Development Fund v. Sroka*, 415 F.

Supp. 1107 (W.D. Pa. 1976). Here the words "as per" make performance of the conditions of the underlying contract a condition precedent to payment of the letter of credit. Such a construction is consistent with the nature of the transaction and the construction given such document by the parties. They were inserted in the document by a banking institution as part of a commercial transaction. The contract of sale is described in detail. A senior vice president signed on behalf of the bank. From these and the other circumstances of the case, it is reasonable to infer that the use of the words "as per" were to be of significance to the contract and the manner in which performance might be anticipated. *See, International Finance Corporation v. Calvert Drug Co.*, 124 A. 891 (1924); Annots. 33 A.L.R. 1162, 104 A.L.R. 1378. Of even greater significance is the plaintiffs' apparent recognition of the effect of having inserted such limiting language in their demand for payment upon the letter. Thus, the plaintiffs stated in their letter of December 29, 1986, to the Bank that:

> [i]t is our position that the contract purchaser has breached the contract and that we are entitled to these funds.

Accordingly, the Court finds that the Court did not err in admitting evidence concerning a breach of the underlying obligation. It was for the jury to then determine whether the letter was wrongfully dishonored and if the customer, Georgelas, had breached its underlying contract with the beneficiaries, Murdick, et al. *Grove v. Viking Jay, Inc.*, 237 Va. 442 (1989). For the reasons set forth above, Counts 2 and 3 of plaintiffs' Motion for New Trial are denied.

Plaintiffs also contend that defendants should have been precluded from introducing certain evidence in mitigation of damages. This evidence related to the subsequent sale of the property to a third party. In arguing the admissibility of such testimony, the counsel for the Bank relied upon the following provision of § 8.5–115:

> (1) When an insurer wrongfully dishonors a draft or demand for payment presented under a credit, the person entitled to honor has with respect to any documents the rights of a person in the position of a seller (§ 8.2–707) and may recover from the issuer the face amount of the draft or demand, together with incidental damages under § 8.2–710 on seller's incidental damages and interest but less

any amount realized by resale or other use or disposition of the subject mater of the transaction. In the event no resale or other obligation is made, the documents goods or other subject matter involved in the transaction must be turned over to the insurer on payment of judgment.

A "document" is defined as "any paper including documents of title, security, invoice, certificates, notice of default and the like."

A "person in the position of a seller" is described as including "as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller." Section 8.2–707, Code of Virginia, as amended.

A "seller" is a person who sells or contracts to sell goods. Section 8.2–103, Code of Virginia, as amended.

"Goods" are defined as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8.8) and things in action . . . ." Section 8.2–105, Code of Virginia, as amended.

The Court believes that it was not the intent of the legislature to make the remedial provisions of Section 8.5–115 applicable to transactions in which a letter of credit is used as a deposit on a real estate contract. Moreover, even were such section deemed applicable to the calculation of damages under such circumstances, it would not apply in a case such as this where damages have been the subject of stipulation by the parties. One must look to the law of contracts to determine if the Court erred in admitting evidence of the subsequent sale of the property.

In general, when a buyer breaches his contract to purchase and the seller resells, the buyer is entitled to consider the proceeds of resale in mitigation of damages. *Williston on Contracts*, 3rd Ed., Section 1353. Thus:

> gains which were or could have been received by the defaulting party by entering into another contract or transaction should be used in reducing damages caused by a breach of contract promise only where the breach gave rise to the opportunity to enter into those other contracts or

transactions. 22 Am. Jur. 2d, C.J.S. *Damages*, Section 509. *See also*, 25 C.J.S. *Damages*, Section 97.

While the "collateral source" doctrine has been consistently applied in tort cases in Virginia, its application to contract actions is questionable. *See, Schickling v. Aspinall*, 235 Va. 472 (1988) (rule held inapposite in that case).

Here the agreement, incorporated in the letter of credit, provided that, in the event of default by the purchaser, the monies represented by the letter would constitute "fixed and liquidated damages" and that the forfeiture thereof would relieve the purchaser from further liability; "it being the express agreement of the parties that sellers do waive any equitable remedies, including specific performance, and [sellers] shall look solely to the deposit." Thus, by stipulation, the parties agreed that damages were uncertain and difficult to ascertain. By reason of such Agreement, they neither contemplated or assented to any other measure of damages. The issue of the later sale and any gain derived therefrom cannot be considered in mitigation. In this connection, the case of *Kollaer v. Puckett* is instructive, wherein the Court found in a similar situation, that:

> [t]o hold otherwise would, in effect, be the abrogation by court of an express term of the contract and the substantiation therefore of a new and different stipulation, fixing a measure of damages uncertain in nature, which the parties did not contemplate or assent to in the beginning. 232 S.W. 914 (1921).

The Court erred when it permitted the defendant Bank to introduce evidence concerning the later sale. This error was compounded by the instruction given on damages. The issue of whether or not the Bank had dishonored the letter of credit upon plaintiffs' demand was the singular issue which should have been submitted to the jury. In the event they were to determine breach by the customer, they would of necessity have to find for plaintiffs in the face amount of the letter with interest. Because the jury may have concluded the beneficiary of the letter suffered no damage as a result of the resale, the verdict must be set aside.

Accordingly, the Court will grant the Motion to Set Aside the Verdict and for a New Trial as to Ground No. 1. In the event this matter is tried again, the sole issue to be determined at that time shall

be that of the liability of the Bank to pay upon the letter of credit. Should the Bank be held liable, the judgment would, of necessity, reflect the stipulated amount set forth in the letter of credit with interest.