JAS. G. BULL, Appellant, v. L. WEISBROD, Appellee.

**CONTRACTS: Forfeitable Land Contracts.** Forfeitures of land
1  contracts for breach of contract conditions must be worked out
   through the 30-day notice provided by Sec. 4299, Code Supp.,
   1913.

**ASSIGNMENTS: Land Purchase Contracts.** A contract for the pur-
2  chase of land on monthly payments is assignable.

**CONTRACTS: Forfeiture—Inconsistent Conduct.** A party to a con-
3  tract may not demand and receive the amounts due under a
   contract, and later, without any change of condition intervening,
   claim that the contract has been forfeited.

**VENDOR AND PURCHASER: Contract for Warranty.** A contract
4  to give a warranty deed conclusively implies a warranty *against
   all incumbrances*, even though vendor describes that which he
   sells as "all my right, title, and interest."

*Appeal from Union District Court.*—HOMER A. FULLER,
Judge.

JANUARY 27, 1919.

ACTION to quiet title. Opinion states the facts. De-
cree for the defendant. Plaintiff appeals.—*Affirmed.*

*D. Davenport* and *Jas. G. Bull,* for appellant.

*Hunn & Jones* and *P. C. Winter,* for appellee.

GAYNOR, J.—This action was brought to quiet title to
certain lots in the city of Creston, Iowa. Plaintiff claims
to be the absolute and unqualified owner of the lots, and is
in possession.

The defense interposed is that, on the 2d day of April,
1912, the plaintiff sold the lots to Ray B. and Doris Weis-
brod, husband and wife, and, at the time of the sale, ex-
ecuted and delivered to them a contract, in writing, by the
terms of which he agreed to sell to the Weisbrods all his

right, title, and interest in and to the lots, on the performance of certain agreements on their part, as follows: They to pay for the lots the sum of $1,100, $10 on the 20th day of April, 1912, and $10 on the 20th day of each and every succeeding month thereafter, until the whole amount, with interest at 6 per cent per annum on unpaid amounts (the interest to run and be paid by stated monthly payments), was fully paid. The Weisbrods were to pay the taxes. The contract then provided:

"But if such sums of money, interest and taxes are paid promptly at the time aforesaid, the plaintiff will execute and deliver to them a warranty deed of said premises as above agreed."

On the 27th day of September, 1915, this contract was assigned to this defendant by the Weisbrods, and this action is brought against him as one claiming some interest under the contract, by virtue of this assignment.

There is very little dispute in the evidence. The only question here is the legal rights of the parties under the facts.

Upon the execution of the contract, the Weisbrods took possession of the property, and made payments in accordance with the contract. They subsequently moved to the state of Colorado. The husband went first, and the wife followed later.

Defendant is related to Mrs. Weisbrod. After the Weisbrods went to Colorado, defendant undertook to pay to the plaintiff all sums claimed by plaintiff to be due upon the contract. We may assume that these payments were made by him for the Weisbrods.

On July 17, 1915, defendant wrote to the plaintiff, enclosing a check for $10, to apply on the contract, and, in the letter accompanying the check, asked him if there were any delinquent payments. The plaintiff received this check, cashed it, and, in reply, advised him that there was $40 due

on payments, and $85.28 on taxes and interest, and that he thought the Weisbrods had no notion of returning, and he didn't want to carry them any longer.   Defendant replied to this letter, and enclosed a check for $40, and asked whether he should send the taxes to the treasurer or to the plaintiff.   Plaintiff replied substantially as follows:

"July 21, 1915.

"L. Weisbrod, Des Moines, Iowa.

"Your favor at hand enclosing $40 to be applied on contract.   I have paid the taxes in order to keep the premises from tax sale.   So you will send the taxes to me.   The amount includes the taxes for this year, due Jan. 1, 1915. This covers only the taxes for 1914.   The next taxes due will be Jan. 1, 1916, for the taxes of 1915.   Weisbrod has paid no taxes at all since they went on the place in April, 1912. They have been in the place 40 months, and have paid for 36 months.   Your payment of the $40 just at hand pays for the 40 months.   The taxes and interest now due me is $85.28."

On the 23d of July, defendant remitted to the plaintiff the $85.28 due for taxes and interest, as stated in the preceding letter.   On the 24th of July, the plaintiff returned to the defendant a receipt, in the following words:

"Received of L. Weisbrod, Des Moines, Iowa, eighty-five and 28/100 dollars, taxes, interest and penalty on Lots 3, 4, 5 and 6 in Block One, Levy's First Addition to Creston, Iowa, for and on behalf of Ray B. Weisbrod.   This is in full of taxes, interest and penalty to date on taxes."

Thereafter, some controversy arose as to whether the $40 remitted by the defendant to plaintiff did not overpay the amount due.   The thought of the defendant was that, in paying the $40, he had overpaid plaintiff.   To this contention, the plaintiff replied:

"If you will count the amount of the payments from the first up to the time I wrote you, you will find they had paid

$360, or 36 payments. If you will count the time, you will find it to be 40 months."

Thereupon, the defendant sent plaintiff, by letter, a list of payments as they appeared on the contract. Thereupon, the plaintiff wrote defendant:

"I think there is a further credit of $5, which I failed to count. That will leave only $5 to pay this month (August). So you will see I am right, except the error of the $5 in the $25 payment."

Thereupon, on August 21, 1915, the defendant remitted to plaintiff the $5 in a letter, in which he said:

"Enclosed $5 for balance payment on this month, and oblige."

This check was received and cashed by plaintiff.

On September 17th, defendant addressed another letter to the plaintiff, enclosing a check for $10, to be applied on the contract. This check was returned to defendant in a letter reading as follows:

"Please find enclosed check you sent me for $10. Mrs. Weisbrod, with her children, has left the premises and gone to her husband in Idaho. I have taken possession, and am having the premises fixed up. They had pretty nearly ruined them. They have paid no interest at all,—just $10 per month rent. It will take at least $100 to put the premises in living order. Ray left some months ago. She has now followed. I tried to help Ray, and also the wife; but they seem to be an indolent set, and Ray a dissipated fellow, so that he lost his place on the railroad. I hope he will do well in the country. I don't know his address."

To this, defendant replied:

"Will you please let me know by whose permission you have taken possession and are repairing the property? You state they have paid no interest. On July 17th, I wrote you in regard to back payments and taxes. In your letter of July 19th, you state he is behind in payments on contract,

$40. Taxes and interest, $85.28, both of which I paid. I would like to have the original tax receipts; also the amount of interest you claim they owed."          ,

Plaintiff replied:

" 'Taxes and interest' refer to the interest on the taxes, though I put none on. There is about $175 interest only. The property has been damaged. It will take $100 to repair it. They have paid $420 on the property *as rent,* leaving a balance of principal, $680; of interest, $175."

To which the defendant replied:

"The contract which you made with the Weisbrods was assigned to me some time ago. Since then, these parties have made a written assignment and transfer of the contract to me, and have also quitclaimed their interest in the property. This assignment and quitclaim has been forwarded to the recorder. There is no more than one month due, and I sent you my check for that."

Defendant in his letter said:

"After receiving the check which I sent you to cover the amount that you said was due, you now claim there is interest on the deferred payments still due. In this connection, I want to call your attention to the contract, which specifically provides that the monthly payment includes the interest."

To this letter, plaintiff replied:

"The contract is not assignable. A man owning real estate has the right to choose with whom he will contract. I have Mrs. Weisbrod's note for $10, with a credit of $3.35. I gave them personal notice some time ago, when they were in default, and had it duly served by a constable, of a forfeiture of their rights under the contract. After notice had been served, they came to me with tears in their voice, and I *rented* the place to them from month to month, as long as they would continue to pay rent and keep the premises in repair; and if they did not default in the payments, and

would keep the place in good repair, and continue until the property was paid for, I would make them a deed. They have failed to keep the house in repair. They let it go to ruin."

Thereupon, the defendant, in a letter to the plaintiff, enclosed a quitclaim deed and $1.25, with a request that it be executed by the plaintiff and returned to him at once.

This action was commenced on the 18th of January, 1916. Defendant has tendered to the plaintiff all the money due upon the contract. That is for September, October, November, and December, 1915. These tenders were made by check. The money was in the bank on which the checks were drawn. This was the manner in which payments had been tendered and accepted before. No objection was urged to the tender on the ground that it was a check. Plaintiff, upon this point, testifies:

"I could have got the check cashed, but defendant had no interest in the property; so I would not accept it. I owned the property then entirely. I returned the check for this reason, and this reason alone: that he had no interest in the property at all; that I owned it then entirely; that they had forfeited it; they had abandoned it; I had taken possession, and there was an agreement between Ray Weisbrod and his wife and myself respecting the abandonment and cancellation of this contract."

The record discloses no action taken to forfeit the contract, such as contemplated by Section 4299 of the Code of 1897, which provides:

1. CONTRACTS: forfeitable land contracts.
"Any contract hereafter made for the sale of real estate * * * which provides for the forfeiture of vendee's rights therein upon the happening of certain conditions, shall not be forfeited or canceled unless, thirty days before a declaration of forfeiture is made, a written notice be served on the vendee or assignee, notice of whose rights as assignee has been

conveyed to vendor, and on the party in possession of said real estate, which notice shall be served in same manner and by same parties authorized to serve original notices, and shall ·contain a declaration of an intention to forfeit said contract, and the reason therefor."

"Sec. 4300. For the period of thirty days after service of said notice the vendee, or those claiming under him, may discharge any unpaid payment * * * or perform any condition broken; and, if said payments are made or conditions broken are performed within said period of thirty days, the right to forfeit for defaults occurring before said notice is served is terminated."

Plaintiff's claim that he had an agreement with the Weisbrods to forfeit and abandon. the contract, as made in his oral testimony on the trial, is wholly inconsistent with his conduct in exacting from this defendant unpaid sums due upon the contract, and the repayment of taxes paid upon the premises. So we do not consider that contention as having any support in the evidence.

The case, therefore, turns upon legal questions: Was the contract assignable? Did defendant obtain by the assignment the interests of the Weisbrods under the contract?

That it was assigned to the defendant by the Weisbrods is not in dispute. The effect of the assignment upon the legal rights of the plaintiff is contested. Our statute provides (Section 3044 of the Code of 1897)

2. ASSIGNMENTS: land purchase contracts.

that all instruments in writing by which one promises to pay to another, without words of negotiability, a sum of money, or a sum of money in property or labor, or to pay or deliver any property or labor, or acknowledges any money, property, or labor to be due, are assignable by indorsement thereon, or by other writing, and the assignee shall have the same right of action which the maker or debtor had against any assignor. There is no provision in this contract against

the assignment. Out of it is created no fiduciary or confidential relationship. There is nothing in the nature of the contract that makes an assignment inequitable or unjust. But even if there were an inhibition against assignment, Section 3046 of the same Code still says it may be assigned, but the maker may avail himself of any defense or counterclaim against the assignee which he may have against any assignor before notice of such assignment is given to him in writing. See, upon this point, *Thomassen & Thomassen v. De Goey,* 133 Iowa 278.

The precise question here was considered by the Supreme Court of Minnesota in *Johnson v. Eklund,* 72 Minn. 195 (75 N. W. 14). That court said, speaking of the right to assign a contract such as we have here:

"There is nothing personal in the nature of the contract. All that the vendor was interested in was the payment of the purchase money at maturity. If he received this, it was wholly immaterial to him who paid the money or who got the land. At most, this stipulation against an assignment is merely collateral to the main purpose of the contract, designed as a means of securing and enforcing performance of what was undertaken by the vendee, to wit, the prompt payment of the purchase money. When the vendor has received all his purchase money, he has received all that he is entitled to, and all that the provision against an assignment was intended to secure. Under such circumstances, the fact that the assignment to plaintiff was not countersigned by the vendor is no defense to an action by her to compel a conveyance."

In the last-mentioned case, the contract provided against an assignment unless the assignment was countersigned by the vendor. The assignment was made without such countersigning. The assignment was held good, as passing all the right of the assignor in the contract; and we must hold here that, when the Weisbrods assigned all

their right, title, and interest to the defendant, it passed to him all the rights that they had under the contract. At the time the assignment was made, all payments required by the contract had been made or tendered, and all the conditions to be performed by them were performed, either by them or by this defendant. At least, at that time, there was nothing of which this plaintiff could complain.

All that the contract required the Weisbrods to do, to preserve the integrity of the contract, had been done at the time plaintiff claims to have attempted to forfeit their rights under the contract. The possession taken by him was subordinate to the rights given to these Weisbrods. For the purposes of this case, we may assume that he had a right to take possession, for the purpose of preserving the property. At the time he took possession, he was receiving these payments from the defendant, for and in behalf of the Weisbrods. He then recognized the contract as in existence. He was then receiving from the defendant, for the Weisbrods, the money which he would not be entitled to receive, had all relationship under the contract ceased, as now claimed by him. If, as contended by him now, some arrangement had been entered into between him and Mrs. Weisbrod, by which the property was surrendered to him and all rights under the contract released, and Mrs. Weisbrod's occupancy was simply as tenant, paying rent, his subsequent conduct becomes strangely fascinating, because of its apparent and yet seemingly unconscious inconsistencies. If the contract had been abandoned by the Weisbrods, how can his subsequent conduct be explained, consistent with honesty of purpose? Assuming, as he does, that the defendant was acting for the Weisbrods, he wrote that there was still something unpaid upon the contract,—that he had paid the taxes for the Weisbrods, and was entitled to be reimbursed; told him of taxes to be

3. CONTRACTS: forfeiture: inconsistent conduct.

paid under the contract for the coming year, and when they would be due. What interest had the Weisbrods in the taxes, if they had abandoned all rights under the contract, and were simply tenants, paying a monthly rental? What justification is there for taking this money from the defendant after the Weisbrods had left the property, or, as plaintiff now says, after they had abandoned the contract and the property?

At the time of the execution of the contract in controversy, it appears that there was a mortgage on the premises for $500. It is the claim of the plaintiff, though denied by the defendant, that he informed Mrs. Weisbrod, before the execution of the contract, of the existence of this mortgage. He admits, however, that he did not communicate the fact to her husband, but excuses his conduct by saying that the knowledge of the mortgage was withheld from the husband on request of the wife. It is the plaintiff's claim that he agreed only to convey his right, title, and interest in the land; that it was his understanding, and the understanding of Mrs. Weisbrod, that they should take the property and pay the $1,100 subject to this mortgage. The mortgage was of record,—a matter not vital to this controversy, in the view we take of it. The court, in its decree, ordered the defendant to pay or tender to the plaintiff the balance due upon the contract, together with such sums as the plaintiff had expended in improving the property since he took possession. Upon the payment of this, the decree directed the plaintiff to execute to the defendant a warranty deed, free and clear of incumbrance. This holding of the court is one of the questions here under consideration.

**4. VENDOR AND PURCHASER: contract for warranty.**

It will be noticed the contract recites that the Weisbrods bought, or agreed to buy, "the right, title, or interest" of the plaintiff in the premises; but it will be noted,

also, that plaintiff agreed, upon the payment of the sums
of money stipulated in the contract, that he would execute
to them a warranty deed. It is now the contention of plain-
tiff that, upon the payment of all the sums stipulated, he
is required to execute only a warranty deed subject to this
$500 mortgage.

This brings us to a consideration of the effect of plain-
tiff's agreement in his contract to execute a warranty deed.

Our statute, Section 2958 of the Code of 1897, provides
for the form of a deed in fee with warranty as follows: "I
warrant the title against all persons whomsoever." The
Code of 1851 provided for the same form of warranty. We
must assume that it was the intention of the plaintiff, when
he agreed to execute a warranty deed, to execute such a
one as the statute contemplated, nothing further being said,
and in form prescribed by the statute contemplated. In
*Funk v. Creswell*, 5 Iowa 62, this court had occasion to give
a judicial construction to the meaning of the words of the
statute (Code of 1851, Section 1232, being the same as our
present statute), and said that the general covenant of·
warranty was intended to include all the usual covenants
in the deed of conveyance in fee simple. Again, in *Van
Wagner v. Van Nostrand*, 19 Iowa 422, this court had oc-
casion to determine the scope and legal effect of the cove-
nant of warranty provided for in the statute. This deci-
sion was made under the Revision of 1860, Section 2240,
in scope and purpose the same as our present statute. The
opinion was written by Judge Dillon. He said, referring
to the *Funk* case:

"That decision establishes that the general covenant of
warranty [provided for in the statute] was intended 'to in-
clude and imply all the *usual covenants* in a deed of con-
veyance in fee simple.' The plaintiff in this action, upon the
covenant set out in the statement [the statement referred to
being, 'I warrant the title to the same, against all persons

whomsoever'], has all the rights which he would have had if the conveyance had contained express covenants of seizin, freedom from incumbrances, right to convey, and the like."

When plaintiff undertook and agreed to make to the Weisbrods a warranty deed, he undertook and agreed to make a warranty deed such as is contemplated by the statute, with the covenants of warranty contemplated by the statute, which, construed by this court, covers the very matter here in controversy. Whatever purpose the plaintif may have had in inserting in the beginning of the con- tract that the Weisbrods had purchased his right, title, and interest, and whatever purpose he had in saying that he agreed to sell his right, title, and interest, was emasculat- ed by his solemn promise to make to them a warranty deed, upon the performance of the conditions on their part to be performed. Under these decisions, the warranty deed which he agreed to make excludes any thought that the property conveyed should be subject to any incumbrance whatso- ever. The warranty deed, when made, must be a warranty against incumbrance, for that is the legal effect of the war- ranty provided for in the statute.

Upon the record, we find that the contract was in force at the time this action was begun, and that it was rightfully assigned to the defendant; that the defendant was entitled to have it recognized as an existing contract; that, upon the payment of the amount contemplated in the contract, the defendant was entitled to a warranty deed from the plain- tiff, in which is freedom from incumbrance.

Upon the whole record, we think the court was right; its decree certainly is just and equitable; and it is, there- fore, sustained, and its action.—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.