GEORGE A. HUBBARD et al., Appellees, v. ROBERT B. WALLACE
COMPANY et al., Appellees; METROPOLITAN LIFE INSUR-
ANCE COMPANY, Appellant.

**BILLS AND NOTES:** Negotiability—Incorporating Mortgage Into
1 **Note—Effect.** A promissory note, otherwise negotiable, is rendered
nonnegotiable by incorporating into the note, by definite reference,
the provisions of the mortgage security which give the mortgagee
holder the option to secure insurance on the mortgaged property
and to pay therefor, and also to discharge unpaid "taxes, charges,
and assessments" on the property, and, if not repaid for such out-
lay, to declare the maturity of the note and of all of said outlay;
and this is true even though the purpose of making the terms of
the mortgage a part of the note is to emphasize the fact that the
note is secured by mortgage. (See Book of Anno., Vol. 1, Sec. 9462
*et seq.*)

**PRINCIPAL AND AGENT:** Authority of Agent—Disbursement of
2 **Borrowed Money.** The fact that a loaner of money who was the
agent of the borrower to negotiate a loan and receive the money
thereon retained the money and paid it to the borrower in install-
ments, in order to protect himself (the loaner), is very persuasive
that the said loaner was not also the agent of the borrower to
disburse said money.

**ESTOPPEL:** Equitable Estoppel—Implied Authority to Negotiate Note.
3 The maker of a nonnegotiable promissory note will not be held to
be estopped to deny liability on the theory that he impliedly
clothed the payee with authority to negotiate the note, when the
entire transaction contemplated such transfer.

Headnote 1:   8 C. J. pp. 146, 201.   Headnote 2:   2 C. J. p. 638.
Headnote 3:   21 C. J. p. 1178.

*Appeal from Pottawattamie District Court.*—T. C. WHITMORE,
Judge.

MAY 7, 1926.

THE plaintiffs are husband and wife, and bring this action
in equity, praying the cancellation of a certain note and mort-
gage executed to the Robert B. Wallace Company, incorporated,
of Council Bluffs, Iowa, on May 8, 1923, and by the said com-
pany transferred to the United States Trust Company, of
Omaha, Nebraska, and by the latter, to the Metropolitan Life

Insurance Company, of New York, upon the grounds of fraud and of a partial failure of consideration, and to quiet title to the mortgaged premises against all of the above named corporations, defendants herein. The Metropolitan Life Insurance Company alone appeared and filed answer. A decree was entered for plaintiffs, as prayed, and the insurance company appeals.—*Affirmed.*

*Morsman, Maxwell & Haggart* and *Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Robertson & Robertson,* for appellees.

STEVENS, J.—The Robert B. Wallace Company, incorporated, was for many years engaged in the loan and insurance business in Council Bluffs, Iowa. For two years preceding the transaction involved in this action, George A. Hubbard was engaged in the business of a general contractor and builder, purchasing vacant lots and erecting buildings thereon for the purpose of sale. To aid him in carrying on said business, he procured loans on the property to be improved, on a 15-year semi-annual amortization plan. On or about March 1, 1923, he made application in writing to the Wallace Company for a loan of $4,500, proposing to secure the payment thereof by mortgage upon the lots involved herein. Later, he sold a portion of this real estate, and, on May 8, 1923, with his wife executed a note for $3,000, payable to the Wallace Company, together with a mortgage upon the remaining property, to secure the payment thereof. On the following day, a new application was signed by George A. Hubbard alone for the loan. The note provided for the payment of interest semiannually, at the rate of 6 per cent, and of the principal in monthly installments of $90, the note maturing finally on September 1, 1938. The plan upon which the loan was made contemplated the payment of the $3,000 to appellees in installments, as the building progressed, the final payment not to be made until it was wholly completed. This, as we gather from the record, is the plan upon which loans of the character above mentioned are customarily made. On

1. BILLS AND NOTES: negotiability: incorporating mortgage into note: effect.

July 9, 1923, the note and mortgage were transferred by the Wallace Company to the United States Trust Company, of Omaha, Nebraska, and, on the following day, the trust company transferred the same to appellant. These transfers were accomplished by indorsements on the back of the note, without recourse, and by written assignments of the mortgage in the usual form, both of which were simultaneously filed for record in the office of the county recorder of Pottawattamie County.

Robert Wallace, who was president of the Wallace Company, died August 29th. It was then, or shortly thereafter, discovered that the company was insolvent. The $3,000 was paid by the trust company to the Wallace Company as follows: $1,400 in May, and the balance in June, 1923. The court found in its decree that the total amount disbursed by the Wallace Company to or for appellees under the terms and provisions of the loan was $745. This sum, with interest, was tendered by them in open court, and in writing, to the party found by the court to be entitled thereto. The payments made to appellees by the Wallace Company were as follows: $300 in cash, and the balance upon orders delivered to laborers and materialmen employed upon the building, and drawn on the Wallace Company, or for other purposes fully authorized by the application. Payment of one order for $1,400 was declined by the Wallace Company.

On August 31st, two days after the death of Robert B. Wallace, this action was commenced for the cancellation of the note and mortgage. Three defenses were interposed by the Metropolitan Life Insurance Company, appellant, all of which are urged by counsel upon this appeal.

I. Appellant alleges that it purchased the note and mortgage from the United States Trust Company in due course, without notice of any defects in the title of the holder thereof, and that it paid full value therefor. It is not claimed that appellant did not pay full value for the note, but it is contended by appellees that it is nonnegotiable, and subject to all of the defenses that might have been urged against it if action were brought thereon in the name of the original payee. The mortgage, which, by specific provisions of the note, was made a part thereof, contained the following provisions:

"In the event the parties of the first part, their heirs, executors, administrators, successors or assigns, shall for any reason fail to keep the said premises so insured or fail to deliver the policies of insurance to the said party of the second part, if it so elects, may have such insurance written and pay the premiums thereon, and any premiums so paid shall be secured by this mortgage and repaid by the parties of the first part, their heirs, executors, administrators, successors or assigns, within ten days after payment by the party of the second part. In default thereof, the whole principal sum and interest and insurance premium with interest on such sum paid for such insurance from the date of payment may be and shall become due at the election of the said party of the second part, its successors or assigns, anything herein to the contrary notwithstanding. * * * And it is further mutually covenanted and agreed by said parties that in default of the payment by said parties of the first part of all or any taxes, charges and assessments which may be imposed by law upon the said mortgaged premises or any part thereof, it shall and may be lawful for the said party of the second part, its successors, legal representatives and assigns, to pay the amount of any such tax, charge or assessment, with any expenses attending the same; and any amounts so paid the parties of the first part shall repay to the said party of the second part, its successors, legal representatives or assigns, on demand, with interest thereon, and the same shall be a lien on the said premises and be secured by the said note and by these presents; and the whole amount hereby secured if not then due shall thereupon, if the said party of the second part so elects, become due and payable forthwith. And the said parties of the first part do further covenant and agree that they will execute or procure any further necessary assurance of the title to said premises and will forever warrant said title." ·

The mortgage further provided for the payment of the expense of collection, in the event that an action should be commenced thereon, including reasonable attorney fees and the expense of an abstract. The particular provisions of the mortgage which it is claimed destroy the negotiability of the note are those authorizing the holder to pay taxes, assessments, and insurance upon the property, if appellees should default therein,

making the same a lien upon the property, and authorizing recovery thereof in an action against the makers to foreclose the mortgage, and the further provision accelerating the maturity of the note. It is urged that these provisions of the mortgage, which, by the terms of the note, are incorporated therein, render uncertain and indefinite the amount which the maker promises to pay, and also the time of payment.

The first question we shall discuss has not previously been decided by this court. It is the rule, well settled in this state, that instruments relating to the same transaction and contemporaneously executed will be construed together. *Swearingen v. Lahner*, 93 Iowa 147; *Des Moines Sav. Bank v. Arthur*, 163 Iowa 205; *Lundean v. Hamilton*, 184 Iowa 907. This is the rule in other jurisdictions. *Frost v. Fisher*, 13 Colo. App. 322 (58 Pac. 872). Nevertheless, it was held in *Des Moines Sav. Bank v. Arthur*, supra, that the negotiability of a note was not affected by the provision in a mortgage executed to secure the payment thereof which authorized the mortgagee to pay the taxes on the mortgaged premises and to recover the same of the mortgagor. The doctrine of these cases is not applicable to the present controversy, for the very obvious reason that the note in question by its specific terms incorporates in and makes every provision of the mortgage a part thereof. The proposition here urged by appellant must be disposed of in exactly the same manner and upon the same principle as it would if the provisions of the mortgage above set out were written in the body of the note. If a note containing identical provisions would be nonnegotiable, then the note in question must be. It is true that the note on its face expresses a definite amount, and also a definite time of payment. Does the provision of the mortgage relating to taxes, assessments, and insurance, the exact amount of which it is impossible to foresee, give rise to such uncertainty as to destroy negotiability? The mere statement of the proposition would seem to answer the inquiry in the affirmative. The court referred to this question, but reserved it for the future, in *Des Moines Sav. Bank v. Arthur,* supra; and, as it has not been previously decided by this court, we must look to the authorities in other jurisdictions in which the Uniform Negotiable Instrument Law has been enacted.

It is not only provided by statute, but apparently universally held, that a promise to pay is not rendered conditional by a statement in the note of the transaction which gave rise to its execution. Section 9463, Code of 1924; *King Cattle Co. v. Joseph,* 158 Minn. 481 (199 N. W. 437); *Continental Guar. Corp. v. Peoples Bus Line,* 1 W. W. Harr. (Del.) 595 (117 Atl. 275); *Tyler v. Whitney-Central Tr. & Sav. Bank,* 157 La. 249 (102 So. 325); *Dollar Sav. & Tr. Co. v. Crawford,* 69 W. Va. 109 (70 S. E. 1089); *Morgan v. Farmington Coal & Coke Co.,* 97 W. Va. 83 (124 S. E. 591); *Metropolitan Nat. Bank v. Vanderpool* (Tex. Civ. App.), 192 S. W. 589; *Slaughter v. Bank of Bisbee,* 17 Ariz. 484 (154 Pac. 1040); *National Bank of Newbury v. Wentworth,* 218 Mass. 30 (105 N. E. 626); *State Banking Co. v. Morgan,* 30 Ga. App. 430 (118 S. E. 415); *Utah Lake Irr. Co. v. Allen,* 64 Utah 511 (231 Pac. 818); *Strand Amusement Co. v. Fox,* 205 Ala. 183 (87 So. 332); *Maryland Cas. Co. v. Shafer,* 57 Cal. App. 573 (208 Pac. 197). See also, as bearing thereon, *Todd v. State Bank of Edgewood,* 182 Iowa 276; *State Bank of Halstad v. Bilstad,* 162 Iowa 433. On the other hand, it has been frequently held that a note which, on its face, is subject to the terms of a contract between the maker and payee, is rendered nonnegotiable. *Robertson v. Kochtitzky* (Mo. App.), 217 S. W. 543; *Greenbrier Valley Bank v. Bair,* 71 W. Va. 684 (77 S. E. 274); *Northwestern Nat. Ins. Co. v. Southern States P. & F. Co.,* 20 Ga. App. 506 (93 S. E. 157); *Klots Throwing Co. v. Manufacturers' Com. Co.,* 103 C. C. A. 305 (179 Fed. 813); *International Fin. Corp. v. Calvert Drug Co.,* 144 Md. 303 (124 Atl. 891). See also, in this connection, *Todd v. State Bank of Edgewood,* supra.

Cases more directly in point, sustaining appellees' contention that provisions of a mortgage such as we are considering, incorporated in the note which it secures, render it uncertain as to amount, and therefore nonnegotiable, are not numerous; but the following will be found to so hold, in terms or effect: *King Cattle Co. v. Joseph,* 158 Minn. 481 (198 N. W. 798); *Consterdine v. Moore,* 65 Neb. 291 (96 N. W. 1021); *Peterson v. Kuhn,* 110 Neb. 372 (193 N. W. 756); *Frost v. Fisher,* supra; *Walker v. Thompson,* 108 Mich. 686; *Hull v. Angus,* 60 Ore. 95 (118 Pac. 284); *Central Sav. Bank of Oakland v. Coulter* (Cal.

App.), 236 Pac. 956; *Moore & Co. v. Burling,* 93 Wash. 217 (160 Pac. 420); *Farquhar v. Fidelity Ins. Co.,* 8 Fed. Cas. 1068; *Smith v. Myers,* 207 Ill. 126 (69 N. E. 858); *Carmody v. Crane,* 110 Mich. 508 (68 N. W. 268). None of the authorities cited by appellant announce a contrary doctrine.

It is well settled that a provision in a mortgage or note for the acceleration of the due date upon default in the payment of interest or taxes does not affect its negotiability. *Commercial Sav. Bank v. Schaffer,* 190 Iowa 1088. The note in question was not rendered nonnegotiable by the accelerating provisions.

Emphasis is placed by counsel upon the provision in the mortgage "that the said parties of the first part, *for the better securing* of the payment of the said sum of money mentioned in the conditions of the said note, have granted, bargained," etc., as bearing upon the purpose for which the mortgage was made a part of the note, and as throwing light upon the intention of the parties. The thought of counsel, as we understand it, is that the sole purpose of the parties in making the mortgage a part of the note was to emphasize the fact that it was intended for the better security of the indebtedness, which included taxes, assessments, and insurance, as incidental to the fixed and determinable obligation of the note. The point is not wholly without merit; but, in our opinion, it cannot be given controlling importance in the interpretation and construction of the two contracts, which, although they serve different purposes, are by their terms united in one. The note, it seems to us, is clearly nonnegotiable, and subject to defenses in the hands of appellant.

II. Another ground urged by appellant for reversal is that, even conceding that the note is nonnegotiable, appellees are not entitled to the relief of cancellation, for the reason that the Wallace Company was employed by them, and acted as their agent in negotiating the loan and in receiving, retaining, and disbursing the money in the manner disclosed, and that payment to it by the trust company was, in law, the equivalent of payment direct to them. This contention of appellant's renders necessary a somewhat full and elaborate statement of the record. The application for the loan contained the following provisions:

2. PRINCIPAL AND AGENT: authority of agent: disbursement of borrowed money.

"If the above loan is granted within twenty days from this date I agree to pay the said Robert B. Wallace Company not to exceed $—— for expenses; to execute the note or notes and mortgage on the above property securing same on forms furnished by said Robert B. Wallace Company and in favor of such person or corporation as is designated therein; to furnish a complete abstract of title and pay for all continuations necessary to be made on same; to furnish insurance as above specified in such form and companies as are selected by said Robert B. Wallace Company for the full term of the loan renewed as they each expire, for the balance of the term of the loan; all of said papers to remain with the loan until fully paid; and to pay for all recorders' fees necessary to show the transaction on the records. You are hereby authorized to pay off any prior mortgages or liens as above named according to their terms, and any balance remaining above the loan herein applied for will be immediately paid for in cash by me."

The application further described the location of the lots, their value, and the nature of the improvements to be placed thereon, fixing the value thereof at $6,000. The pertinent terms of the application quoted above are that appellees thereby agree to pay the Wallace Company its expenses for securing the loan, to execute the note and mortgage on forms to be furnished by the Wallace Company, and make the same payable to such persons or corporations as shall be therein designated, and authorize the said company to pay off prior mortgages and liens upon or against the mortgaged premises, and to pay the balance of the proceeds of the loan to George A. Hubbard in cash. In so far as it may be claimed that the Wallace Company was the agent of appellees, merely for the purpose of securing the loan, controversy may well be avoided by conceding such claim. If this was the full scope and extent of the agency, it by no means necessarily follows that the Wallace Company retained and disbursed the money as the agent of appellees. It is a fair inference from the record that some sort of mutual arrangement or agreement existed between the Wallace Company, the United States Trust Company, and appellant, or the two last named, at least, for the placing and handling of loans of the nature of the one in question. The evidence upon this point is not very

direct, but we think, nevertheless, fairly satisfactory. Sometime prior to the execution of the instruments in question, Robert B. Wallace made a trip to New York, to visit the offices of appellant. No direct evidence was offered as to the purpose of this visit, but a few circumstances are disclosed by the record which may offer some explanation thereof. After Wallace's visit to New York, the Wallace Company became the agent of appellant for the collection of installments due on loans made by the Wallace Company, which, by the aid of the trust company as an intermediary, were transferred to appellant. This, however, appears to have been the full scope of the agency of the Wallace Company for appellant. The testimony introduced by appellant upon this point is as follows:

"This defendant is informed and states the fact to be that the Robert B. Wallace Company was never the agent of the United States Trust Company for any purpose whatever, excepting for the one purpose, to wit, of collecting principal and interest upon said notes and mortgages which had been sold by the Robert B. Wallace Company to the United States Trust Company, such collections to be made as the principal and interest upon said notes and mortgages purchased by the United States Trust Company from the Robert B. Wallace Company mature."

The manner in which loans like the one before us were handled between he Wallace Company and the United States Trust Company was, in substance, as follows: Applications were taken therefor by the Wallace Company upon blanks printed by it, from samples furnished by appellant, and submitted to the United States Trust Company, which acted as intermediary in the final disposition thereof, when the papers were completed. The proposed security was thereupon examined by a representative of the trust company, and, if the application was approved, the papers were transferred to the trust company, and the money paid to Wallace Company. Loans were also made by the Wallace Company for a shorter period, which were sold to individuals. The Wallace Company in each instance, and always, assigned the 15-year semiannual amortization loans to the trust company. The indorsement of the notes, both by the Wallace Company and the trust company, was with-

out recourse. We have already stated that loans of the character in question were especially designed to meet the necessities of prospective borrowers who owned one or more vacant lots on which it was desired to erect a residence. The lots, as in this case, afforded wholly inadequate security for the amount required. To meet this difficulty, it was a part of the plan on which the loans were made that payment should be made to the borrower in installments only, as the work of building progressed. It is obvious that the retention of the money by the Wallace Company in this case was not for the protection of appellees, nor is it shown to have been their desire that the same be held by that company, as banker or agent for them. They apparently had nothing to say about it. It would have been equally convenient, so far as appellees were concerned, to have received and deposited the money in a local bank to their credit, and to have drawn thereon as necessity arose. The obvious reason for the retention and disbursement of the money by the Wallace Company was to guard the security and protect the lender against loss. The record does not disclose the exact terms of the arrangement, if any, between the trust company and the Wallace Company, covering the subject. The Wallace Company was, however, the agent of appellant for the collection of the installments of principal and interest as they matured, and this arrangement was a part of the general plan for making and handling loans of this character. Agency is ordinarily a question of fact. *Donaldson v. Kenegy,* 197 Iowa 893; *Youtsey v. Union Cent. L. Ins. Co.,* 191 Iowa 1120; *Thomas v. Desney,* 57 Iowa 58; *Security Co. v. Graybeal,* 85 Iowa 543; *McLean v. Ficke,* 94 Iowa 283.

It is conceded in this case that appellees agreed to pay the Wallace Company a commission for securing the loan, and we may infer from the testimony as a whole that the commission was shared by the Wallace Company with the trust company. This, however, at most, made the Wallace Company the agent of appellees for the purpose of securing and receiving the money.

The testimony of the appellee George A. Hubbard must not be overlooked in this connection. He testified that Wallace informed him that his company was advancing and would advance the money in such sums and at such times as were agreed

upon, and that the note would not be sold until the building was completed. This did not make the company the agent of the borrower to retain and disburse the money. On the contrary, the retention of the amount due appellees must have been to protect the company, if it had not sold the note. Appellees admitted that they knew that the note and mortgage were to be sold to appellant. The record, however, shows conclusively that, if the witness testified truthfully as to what Wallace told him, he was misinformed as to the facts. The language of the application signed by the borrower in *McLean v. Ficke,* supra, appointing Coleman, who negotiated the loan, as his agent, is much more comprehensive than the language of the application signed by Hubbard. The court in the *McLean* case held that the terms of the application were more in the nature of a written consent by the borrower than an authorization. We shall not review the facts of that case, which are, in many respects, similar to the facts in the case at bar. The conclusion reached therein tends rather strongly to support the contention of appellees, as a careful reading of the case will show. The same is true of *Security Co. v. Graybeal,* supra.

Appellant relies, somewhat, at least, upon *Merriam v. Haas,* 3 Wall. (U. S.) 687 (18 L. Ed. 29) ; *Barksdale v. Security Inv. Co.,* 120 Ga. 388 (47 S. E. 943) ; *Donaldson v. Kenegy,* supra; and a few other cases. We do not deem it necessary to differentiate the above named cases from the case at bar. A careful reading thereof will disclose that the principle upon which they were decided is not applicable here. The very fact that the plan upon which the loan was made contemplated that the Wallace Company should retain the money and disburse it only in installments as the work progressed, is almost in itself conclusive against the contention of appellant that it was held by said company as the agent of appellees. The reservation in the agreement that the money should be paid to the borrower only as the construction of the building progressed, leaves no doubt that its purpose was to protect the lender, and not the borrower. Appellees, at most, consented to this arrangement as a part of the terms upon which the loan was made. It is not material in the consideration of this point that the note

was indorsed by the Wallace Company to the trust company, and by it to appellant, without recourse.

It is our conclusion that the Wallace Company did not retain the proceeds of the loan as the agent of appellees, and that, to the extent indicated by the decree of the court, there was a failure of consideration for the note.

III. Lastly, it is contended that the execution of the note and mortgage to the Wallace Company by appellees, as their agents to negotiate the loan, clothed it with apparent authority to dispose thereof and receive the money as such agent; and that, as one of two innocent persons must suffer, the loss should fall upon the one who created the agent and clothed him with apparent authority to represent him. We think it clear that the principle is not applicable to the facts of this case. The loan was handled according to custom, and in harmony with the plan devised therefor and understood by all of the parties. The authority of the Wallace Company to sell and transfer the instrument was apparent on the face thereof; and everyone dealing with it on the basis of such authority was bound to know that the note was not negotiable, and that it was subject to such defenses as the maker might legally interpose to an action thereon. The infirmity inhered in the instrument. What we have already said sufficiently disposes of this point. There is nothing in the record to sustain appellant's claim of estoppel. The conclusion reached on the above propositions is decisive of the case, and other questions discussed by counsel need not be considered.

The decree of the court below must be, and it is,—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.

3. ESTOPPEL: equitable estoppel: implied authority to negotiate note.