NASH v. REHMANN BROS., Inc., et al.[*]
No. 8929.

Circuit Court of Appeals, Eighth Circuit.
Oct. 27, 1931.

[*]Rehearing denied December 31, 1931.

Hiram S. Hunn, of Des Moines, Iowa (Charles E. Hunn, of Des Moines, Iowa, on the brief), for appellant.

H. H. Stipp, of Des Moines, Iowa (Stipp, Perry, Bannister & Starzinger, of Des Moines, Iowa, on the brief), for appellees.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

Appellees were the owners of ten real estate purchase contracts covering lots in various additions to the city of Des Moines, Iowa. February 27, 1929, appellees traded said contracts to appellant for certain corporate stock and made written assignment to appellant thereof. Appellant subsequently paid taxes and items of interest and insurance and received some money payments. October 19, 1929, appellant brought this suit against appellees as assignors of said contracts, basing the action on the fact that each contract was in default and payments due thereon were unpaid. Paragraph 7 of the complaint which is the basis of the action is as follows: "Under the laws of the State of Iowa, the Respondents as the assignors of the several and various contracts, are liable to the Complainants as the assignee upon the default of the several various contractors which therein promised to pay money."

The question of liability was raised by appellees moving to strike this paragraph and to dismiss the bill of complaint for the reason that it did not state facts entitling complainant to relief. The court sustained the motion, and this appeal followed.

The case involves the applicability of certain sections of the Iowa Code to the facts. These sections are Code 1927:

"9451. *Assignment of nonnegotiable instruments.* Bonds, due bills, and all instruments by which the maker promises to pay another, without words of negotiability, a sum of money, or by which he promises to pay a sum of money in property or labor, or to pay or deliver any property or labor, or acknowledges any money, labor, or property to be due, are assignable by indorsement thereon, or by other writing, and the assignee shall have a right of action thereon in his own name, subject to any defense or counterclaim which the maker or debtor had against any assignor thereof before notice of such assignment."

"9456. *Assignor liable.* The assignor of any of the above instruments not negotiable shall be liable to the action of his assignee without notice."

These sections or ones corresponding to them were found as far back as the Code of 1851 in a chapter captioned "Notes and Bills."

Appellant contends that these real estate contracts are covered by that portion of section 9451 which refers to instruments by which the maker promises to pay another without words of negotiability a sum of money. They could not by any stretch of imagination fall under the other provisions of said section. Appellant devises a very ingenious theory upon which to base recovery, to wit, that the obligations of the assignors of these real estate contracts are the same as the obligations of the assignor of a nonnegotiable promissory note; that such contracts are in fact nonnegotiable promissory notes with an executory promise to convey on the part of the vendor.

The real estate contracts in issue have many agreements to be performed by the vendee, such as paying taxes, keeping property in repair, keeping up insurance, and some of them further provide that the assignee shall not sell or rent to any one of African blood. Consent is granted to telephone and light companies to construct poles across said real estate. The written assignments to complainant cover the interest of the assignors in the contracts and in the property described therein, and assignee agrees therein to perform all the obligations of the contracts which the assignors had originally agreed to perform.

Appellees contend that in the true meaning of the term these contracts are negotiable. There may be a broad sense in which this might be technically true, but not

in the general conception of the term as applied to commercial paper. In 3 Ruling Case Law, § 11, page 837, is the following clear expression: "The ·term 'negotiable' is frequently used in a broad sense, to describe any written security which may be transferred by indorsement and delivery, or by delivery only, so as to vest the legal title in the indorsee and thus enable him to sue on the instrument in his own name. But in its commercial and more restricted sense, the word 'negotiable' is applied to paper which passes from hand to hand by indorsement, or mere delivery, and which in the hands of a 'holder in due course' is free from all equities between the original parties to the paper, existing at the time of. its transfer or arising subsequent thereto. It is in this narrower sense that the word is used in the Negotiable Instruments Law."

Clearly these contracts are not negotiable instruments. Hubbard et ux. v. Robert B. Wallace Co., Inc., 201 Iowa, 1143, 208 N. W. 730, 45 A. L. R. 1065.

■ Does the fact that they are not negotiable instruments bring them within the purview of section 9451? Appellant contends that they are either negotiable instruments or nonnegotiable instruments. This would seem to be true as a bald statement if no attention was to be paid to the technical meanings of such words, well known to the law, as have been recognized and established in the development and operation of the law merchant. A contract between an employer and an employee for services would be, nonnegotiable, but it would not be a nonnegotiable instrument under section 9451. A contract by which one would agree to sell a patent right with many limitations and conditions in the contract for the contracting party to perform would not be either a negotiable or a nonnegotiable instrument as the term is used in section 9451. This section in our judgment relates entirely to commercial paper. It is not constructed to embrace such bilateral real estate contracts as are here involved. If the Legislature had desired to cover contracts of this nature, it could very easily have used appropriate language therefor. Counsel on neither side have been able to cite any Iowa cases where this exact question has been presented, and our search has failed to disclose any. It is strange that in all these years, with the multitude of transactions in the state of Iowa, where assignments of real estate contracts are involved, this question has not found its way into the Iowa courts for an ultimate decision. It would seem to indicate a general consensus of legal opinion that such statutes as section 9451 relate only to bills and notes or general commercial paper.

■ Appellant seems to rely on Bull v. Weisbrod, 185 Iowa, 318, 170 N. W. 536, as an authority substantiating the placing of such contracts within the purview of section 9451. We fail to see any particular applicability of said case to the present one. The question there was one of an assignment at a time when the purchaser was not in default. The vendor was seeking to quiet title against the vendee's assignee on the theory that the contracts were not assignable under section 3044 of the Code of 1897, now section 9451 of the Code of 1927. Practically all the cases cited by counsel for appellant relate to bills and notes. There is no question that the Iowa rule under the statute is that the assignor of a nonnegotiable promissory note guarantees payment thereof to his assignee. As said in Berry v. Gross, 192 Iowa, 300, 184 N. W. 661, 663, "The liability of an indorser of a nonnegotiable instrument is direct and positive and equivalent to the execution of a new note." Lynch v. Mead, 99 Iowa, 66, 68 N. W. 579; Allison v. Hollembeak, 138 Iowa, 479, 114 N. W. 1059; Park v. Best, 176 Iowa, 7, 157 N. W. 233. Some of the cases cited discuss the question of the right of the assignee of a promissory note not negotiable to sue the assignor without first demanding payment of the maker, and that seems to be the province of section 9456.

■ The terminology of section 9451 seems to make clear the application of said section only to commercial paper. Its language shows it does not refer to all contracts that may be nonnegotiable. It refers to instruments by which the maker promises to pay, etc. The term "maker" is one used as to commercial paper and not as to general contracts. It has a well-understood meaning as applicable to promissory notes. It has no application to bilateral real estate contracts such as those involved here. These contracts have no maker as that term is known and understood in the law of bills and notes. The terms "negotiable instrument," "nonnegotiable instrument," "instrument," all have a well-understood technical meaning in the law of bills and notes. Section 9456 does not create a new cause of action. It refers to "above instruments not negotiable"; that is, the instruments covered by sections 9451 and 9453. The latter, however, referring to open accounts, is not material here. As the contracts in question are not instruments embraced under section 9451, it follows that section 9456 does not create a right of action in

the complainant against the assignors of these contracts.

 A general charge of fraud was pleaded in the complaint, but merely by way of conclusions. That was not sufficient to raise the issue of fraud. Midland Mortgage Co. v. Rice et al., 197 Iowa, 711, 198 N. W. 24. The specifications of error urged do not cover this question, and the only reference to it on the part of appellant is in the reply brief. We think this question is waived by the failure to argue the same.

The judgment of the trial court is affirmed.