INTER-OCEAN REINSURANCE COMPANY, Appellant, v. RUSH GABRIELSON, Appellee.

No. 44753.

JUNE 20, 1939.

William M. Dallas and Donnelly, Lynch, Anderson & Lynch, for appellant.

Frank W. Senneff, for appellee.

SAGER, J.—Plaintiff's action is bottomed on a written instrument which, so far as is material to this inquiry, is as follows:

"GUARANTEED PRICE PER BUSHEL
"APPLICATION
"INTER-OCEAN REINSURANCE COMPANY
"CEDAR RAPIDS, IOWA

"APPLICATION of Gabrielson & Choder % Rush Gabrielson, of Crystal Lake, P. O. R. F. D. No.——County of Hancock, State of Iowa, to the Inter-Ocean Reinsurance Company for annual indemnity against damage or loss to growing crops by hail, from noon standard time of the 13 day of May, 1930, to noon standard time of the 20th day of September, 1934, it being understood that this company is not liable for losses occurring prior to May 1st nor later than September 20th of each year, on the following described premises: * * * "

The application continues with a description of the crops grown, the amount payable, the statement that the applicant was "the owner" whose address was Crystal Lake, Iowa, and that the loss, if any, was payable to the assured. The instrument then continues:

"IN CONSIDERATION WHEREOF, I agree to pay to the Inter-Ocean Reinsurance Company at Cedar Rapids, Iowa, on October 1, 1930, the sum of $130.20; on October 1, 1931, a sum equivalent to three-fourths of said amount * * * .

"Gabrielson & Choder

. . . . . . . . . . . . . . . . . . . .
"Rush Gabrielson

"Dated May 13, 1930.
"Barby & Gabrielson, Agent.

"A policy in force at the end of any hail season, on which the current year's premium has been paid, may be canceled during the months of October, November or December, without further cost, by surrendering the policy to the home office at Cedar Rapids, Iowa."

On the back of the application appears this endorsement:

"FOR HAIL INSURANCE OF
"Gabrielson & Choder
"Postoffice Crystal Lake
"R. F. D. No.——
"County Hancock Iowa
"Date of Application 5/13 1930
"Insurance expires September 20, 1934.
"Amount Insured, $3255.00

"Rush Gabrielson Local Agent
"Crystal Lake Postoffice
"Policy Issued 1930."

A photostatic copy of the application was attached to the policy which was issued and mailed to appellee and received by him. On this instrument plaintiff sought judgment as if it were the direct obligation of appellee. The only testimony with reference to the payment or nonpayment of the premiums is this from the assistant head of plaintiff's hail department:

"The only premium which was subsequently paid for any period, to my knowledge, was for the first year, that is, the premium which became due on October 1, 1930. The payment of this premium was entered on our Premium Journal on January 5, 1931."

A stamp on the application shows that a commission was paid on this policy on May 23, 1930, and plaintiff's Exhibit B is a check for $42.34, payable to Rush Gabrielson, which, according to plaintiff's own representative, was payment of commission on three policies, including the one issued to Gabrielson and Choder.

At the conclusion of plaintiff's evidence, defendant made a motion to direct on the ground that plaintiff's Exhibit A, the application, shows on its face that he signed not only as agent

for the company, but for the partnership, and that, as a consequence, in the absence of fraud or violation of instructions, he was not personally responsible; that the evidence fails to show that the defendant did in fact sign the application or that it was signed for him; or that a policy was issued, or to whom; or that it was in force and effect in the year 1931, and that the plaintiff had failed to establish that the policy had not been canceled for the year 1931. Other grounds are stated for the motion but which need no attention.

The court sustained the motion generally and entered its judgment against the plaintiff. The case under investigation really presents but one question: Did this instrument constitute an agreement on the part of appellee to pay on October 1, 1931, the sum stated in the application? The trial court held that it did not, and in so doing was right.

Counsel for appellant have called our attention to many authorities. They deal largely with statutes and decisions having reference to negotiable instruments and to the meaning and effect of the symbol "%", as used in the application. It will scarcely be contended under our decisions that this may be classified as a negotiable instrument. The application was only a part of the insurance contract the parties undertook to make, and was attached to and made a part of the policy. The instrument does not come within the definition of a negotiable instrument as set forth in section 9461, Code 1935. Hubbard v. Wallace Company, 201 Iowa 1143, 208 N. W. 730, 45 A. L. R. 1065.

There is much discussion and argument as to the meaning and effect of the symbol "%" and its import as used here, particularly on the question of the relationship which appellee bore to the transaction. Without going into detail it seems to us that this record can be read to but one conclusion, and that is, that the defendant did not think he was binding himself to the payment of this premium for which plaintiff sues. Neither is there any basis for the thought that appellant was relying on the appellee to pay a premium on an insurance policy in which he could have no interest except to collect a commission as soliciting agent for plaintiff. Its own representative at the home office testified that the envelope containing the policy which was in fact issued was addressed to Gabrielson and Choder and sent to appellant's agent, the defendant, at Crystal

Lake. As already pointed out he was paid a commission for his services in procuring this and two other policies.

Neither the policy nor a copy was offered in evidence and we have no way of knowing whether, if at all, defendant's name appears therein or thereon. It is clear, however, that the application recognized Gabrielson and Choder as applicants and owners of the land upon which the crops insured were to be grown. Appellee urges that he acted not only as agent for plaintiff, but for the partnership as well, and calls attention to many authorities on the question of liability of agent in such a situation. The views we have here announced make it unnecessary to discuss these citations. The parties placed their own construction on what was intended. We think that the court was clearly right when it held in effect that this was not a contract wherein plaintiff, after paying its own agent for the soliciting of this insurance, expected to sue and get back not only the laborer's hire, but make him pay as well for Gabrielson and Choder's hail insurance. But appellant insists:

"Where an instrument containing the words 'I promise to pay' is signed by two or more persons, they are jointly and severally liable thereon, unless the one seeking to escape liability indicates in connection with his signature that he signed in a representative capacity, or the instrument on its face otherwise negatives personal liability."

The Iowa cases cited to that proposition are distinguishable. In Exchange Bank v. Schultz, 167 Iowa 136, 149 N. W. 99, the note was signed by the defendant without anything to indicate that the defendant was not signing in his own behalf. In Bryan v. Brazil, 52 Iowa 350, 3 N. W. 117, defendant entered into a contract in his own name without disclosing that he was an agent and contracting as such. In Junge v. Bowman et al., 72 Iowa 648, 34 N. W. 612, suit was upon a note signed simply by the defendant, with nothing to indicate that anything was intended other than the personal liability of that defendant. Among the authorities cited by appellant is Coal River Collieries v. Eureka Coal & W. Co., 144 Va. 263, 132 S. E. 337, 46 A. L. R. 485, but as we read that case, it is an authority against rather than for plaintiff. The case reviews a number of the authorities and discusses when, where and how it may be shown by the defendant that it was not the purpose or intention of the

parties that the defendant should be personally bouna. In the case before us, we need not discuss the question of fraud or mistake or the intention of the parties because as has already been said, conduct of these parties can be read but to one conclusion and that is that the defendant was plaintiff's agent, known to be so, and paid for the services rendered by him in connection with this insurance. The claim presently made seems to have been an afterthought.

Our attention is called to sections 9054 and 9055 of the Code, 1935, referring to the right of cancellation on the part of the insurer and insured, respectively, this to appellee's contention that the plaintiff had failed to show that the policy was in force for the year 1931. The disposal we make of the case renders unnecessary a consideration of this feature. Neither is it necessary to analyze the Code sections quoted from the negotiable instrument law.

We think the court found the situation in its true light and properly rendered the judgment it did. The case is, therefore, affirmed.—Affirmed.

MITCHELL, C. J., and HALE, MILLER, OLIVER, HAMILTON, STIGER, and RICHARDS, JJ., concur.

BLISS, J., takes no part.